# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Manufacturing Resources International, Inc. | § § § § | |
| Plaintiff, | § § | Civil Action No. _____ |
| v. | § § | |
| Civiq Smartscapes, LLC, | § § | |
| Civiq Holdings, LLC, | § § | JURY TRIAL DEMANDED |
| Comark, LLC, | § § | |
| and | § § | |
| Comark Holdings, LLC | § § | |
| Defendants. | § § § | |

## COMPLAINT

Plaintiff Manufacturing Resources International, Inc. ("MRI" or "Plaintiff") files this Complaint against Defendants Civiq Smartscapes, LLC, Civiq Holdings, LLC, Comark, LLC, and Comark Holdings, LLC (collectively, "Defendants"); and alleges as follows:

### I. NATURE OF THE SUIT

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, specifically 35 U.S.C. § 271(a), (b), and (c).

2. This is also a claim for trademark infringement arising under the trademark laws of the United States, Title 15 of the United States Code, specifically 15 U.S.C. § 1114.

3. This is also a claim for deceptive trade practices, unfair competition, and

injury to business reputation under the common law of the state of Delaware.

## II.  THE PARTIES

4.      Plaintiff MRI is a corporation organized under the laws of the state of Georgia having a principal place of business at 6415 Shiloh Road East, Alpharetta, GA 30005.

5.      Upon information and belief, Defendant Civiq Smartscapes, LLC is a limited liability company organized and existing under the laws of the state of Delaware and maintaining its principal place of business at 125 Summer St., Suite 1840, Boston, Massachusetts 02110.  Upon information and belief, Civiq Smartscapes, LLC may be served with process by serving its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

6.      Upon information and belief, Defendant Civiq Holdings, LLC is a limited liability company organized and existing under the laws of the state of Delaware and maintaining its principal place of business at 125 Summer St., Suite 1840, Boston, Massachusetts 02110.  Upon information and belief, Civiq Holdings, LLC may be served with process by serving its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

7.      Upon information and belief, Defendant Comark, LLC is a limited liability company organized and existing under the laws of the state of Delaware and maintaining its principal place of business at 440 Fortune Blvd., Milford, MA 01757.  Upon information and belief, Comark, LLC may be served with process by serving its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

8.      Upon information and belief, Defendant Comark Holdings, LLC is a limited

liability company organized and existing under the laws of the state of Delaware and maintaining its principal place of business at 440 Fortune Blvd., Milford, MA 01757. Upon information and belief, Comark Holdings, LLC may be served with process by serving its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

### III.  JURISDICTION AND VENUE

9.      This action arises under the patent laws of the United States, Title 35 of the United States Code, among other claims. This action also arises under the trademark laws of the United States, Title 15 of the United States Code, specifically 15 U.S.C. § 1114. Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a).

10.      The remaining claims arising under the common law of the state of Delaware are related to the patent and trademark claims as they involve the same case or controversy under Article III of the United States Constitution. Thus, this Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over each Defendant pursuant to due process and the Delaware Long Arm Statute. Each Defendant, directly or through intermediaries, has conducted and conducts  substantial business in this judicial district and state, including but not limited to: (i) engaging in at least part of the infringing acts alleged herein; (ii) purposefully and voluntarily placing one or more infringing products or services into the stream of commerce with the expectation that they will be purchased by consumers in this forum; and/or (iii) regularly doing or soliciting business,  engaging in other persistent courses of conduct, or deriving substantial revenue from goods and  services provided to

entities in Delaware and in this District.

12.    For example, each Defendant markets, offers to sell, and sells infringing displays to customers in this judicial district and state through their websites (http://www.vertigodisplays.com/Home.aspx, http://civiqsmartscapes.com/, and http://comarkcorp.com/). As such, this Court has personal jurisdiction over the Defendants because they conduct substantial and continuous business in this judicial district via the Internet, and otherwise, and have established minimum contacts within this judicial district such that the exercise of jurisdiction would not offend traditional notions of fair play and justice.

13.    As a further example, each Defendant is a resident of Delaware, being organized and existing under its laws.

14.    Venue is proper in this Court under 28 U.S.C. §§ 1391(b)–(d) and 1400(b) for the  reasons set forth above.

## IV.  BACKGROUND FACTS

15.    MRI is in the business of designing and manufacturing indoor and outdoor digital displays, sometimes referred to as liquid crystal displays or "LCDs", at its design and manufacturing facilities near Atlanta, Georgia.

16.    MRI is considered to be an industry leader in the manufacture of outdoor and semi-outdoor digital displays, and has successfully sold its displays for several years to customers in the U.S. and in many countries around the world.

17.    MRI currently has approximately 20,000+ of its displays in use in 18 countries.

18.    One of MRI's earliest digital displays was installed outdoors in the sunny, hot, dusty environment of Las Vegas, Nevada in about the year 2007 and is still functioning

outdoors, very well, to this day at the same location.

19.     Hundreds of MRI displays were installed in Manhattan for MRI customer CBS Outdoors in 2009 at subway entrances all over New York City, and are still performing their intended function today. These outdoor displays endured the full weather impact of Hurricane Sandy and were not adversely affected.

20.     Historically, companies have used posters, signs, and other static displays to present information or provide marketing channels.

21.     Digital displays provide a medium for displaying advertising content and other information that can be changed readily and frequently, as well as presented by use of dynamic and/or interactive images.

22.     Digital displays, however, present their own challenges – the displays must function properly under many environmental conditions (e.g., day, night, sun, clouds, rain, snow, hail, winds, fog, heat, cold, humidity, aridness, and in unclean air), be energy efficient, work reliably for long periods of time, and be highly readable (sometimes in dark indoor conditions or bright outdoor conditions), among other challenges.

23.     MRI has built its company around being a leader in developing and manufacturing digital display products that overcome these and other challenges.

24.     These displays include, but are not limited to, digital menu boards, mobile displays, sidewalk displays, bus shelter displays, in-store displays, out-of-store displays, and self-ordering kiosks.

25.     MRI's resources include 80+ engineers on staff and 136,000+ square feet of manufacturing facilities.

26.     MRI has invested significant resources (costing MRI millions of dollars) into

the research, development, and design of its new and innovative digital display products.

27.     MRI has also invested significant resources in developing a robust intellectual property portfolio to protect its innovations.  MRI's portfolio includes hundreds of domestic and foreign patents and pending patent applications.

28.     For example, some of MRI's patents include apparatuses, systems, and techniques for controlling the temperatures within the displays, structures and housing for the displays and other equipment, as well as various sensors and systems, all of which are designed to maintain optimum performance of displays when placed in challenging environmental conditions.

29.     MRI has never sold, licensed, or otherwise authorized Defendants to use any of its intellectual property.

30.     MRI maintains a list of its issued patents on its website (http://mri-inc.net/patents/).

31.     MRI follows some of its sales of displays with monitoring, maintenance, and service work performed under paid service contracts for its customers.

32.     Upon information and belief, Defendants are also in the business of designing and manufacturing indoor and outdoor digital displays.

33.     Upon information and belief, Defendant Civiq Smartscapes, LLC is owned and operated by Civiq Holdings, LLC.

34.     Upon information and belief, Defendant Civiq Smartscapes, LLC and/or Civiq Holdings, LLC recently acquired Vertigo Digital Displays of Toronto, Canada.

35.     Upon information and belief, Defendant Civiq Smartscapes, LLC and/or Civiq Holdings, LLC operates and advertises its products on the website:

http://civiqsmartscapes.com/.

36.    Upon information and belief, Defendant Civiq Smartscapes, LLC and/or Civiq Holdings, LLC is also in the business of designing and manufacturing indoor and outdoor digital displays.

37.    Upon information and belief, Defendant Civiq Smartscapes, LLC and/or Civiq Holdings, LLC is involved with the design, manufacturing, sales and/or offers for sale of the "Link" product.  Upon information and belief, the former Vertigo Digital Displays, and now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC is involved with the design, manufacturing, sales and/or offers for sale of outdoor digital displays incorporating Samsung's OH-D line of display products.  Exhibit C (photo attached to May 17, 2016 letter to Vertigo, showing use of Samsung display products).

38.    Upon information and belief, the Totem, Ferro, and Pronto lines of products incorporate the Samsung OH-D line of display products.  *See e.g.,* Exhibit C.

39.    Upon information and belief, the former Vertigo Digital Displays, now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC is also in the business of designing and manufacturing indoor and outdoor digital displays.

40.    Upon information and belief, the former Vertigo Digital Displays, now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC operates and advertises its products on the website: http://www.vertigodisplays.com/.

41.    Upon information and belief, the former Vertigo Digital Displays, and now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC is involved with the design, manufacturing, sales and/or offers for sale the Totem, Ferro, and Pronto lines of products.

42.    Upon information and belief, the accompanying literature for the Totem,

Ferro, and Pronto lines of products, states that the thermal management system for these displays is substantially described in U.S. Patent No. 8,472,174 (the '174 patent) granted June 25, 2013 and originally assigned to Vertigo Digital Displays Inc. A true and accurate copy of the '174 patent is attached hereto as Exhibit D. *See also* Exhibit FF.

43.     Upon information and belief, Defendant Comark, LLC is owned and operated by Comark Holdings, LLC.

44.     Upon information and belief, Defendant Comark, LLC and/or Comark Holdings, LLC operates and advertises its products on the website: http://comarkcorp.com/.

45.     Upon information and belief, Defendant Comark, LLC and/or Comark Holdings, LLC is involved with the design, manufacturing, sales and/or offers for sale of the Link product.

46.     Upon information and belief, the Link product is substantially described in U.S. Patent No. 9,451,060 (the '060 patent) granted September 20, 2016 to Applicant Civiq Smartscapes, LLC.  A true and accurate copy of the '060 patent is attached hereto as Exhibit E.

47.     Upon information and belief, Defendant Comark, LLC and/or Comark Holdings, LLC is involved with the design, manufacturing, sales and/or offers for sale of the Totem, Ferro, and Pronto lines of products.

48.     MRI sent correspondence to the former Vertigo Digital Displays, now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC, on May 17, 2016 informing them of many of MRI's patents and MRI's belief that Vertigo Digital Displays may be infringing MRI's patents.  Letter and its attachments are attached hereto as Exhibit F.

49.     The letter itself and the attached Exhibits detail how the former Vertigo Digital

Displays, now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC, products infringe MRI's Patents.

50.    MRI sent correspondence to Defendant Civiq Smartscapes, LLC on May 24, 2016 informing them of many of MRI's patents and MRI's belief that they may be infringing MRI's patents.  Letter attached hereto as Exhibit G.

51.    The letter itself and the attached Exhibits detail how Defendant Civiq Smartscapes, LLC and/or Civiq Holdings, LLC products infringe MRI's Patents.

52.    MRI received a reply letter on June 15, 2016 informing MRI that Civiq Holdings, LLC was the parent company of Civiq Smartscapes, LLC and would be responding on Civiq Smartscapes, LLC behalf in the near future. Letter attached hereto as Exhibit H.

53.    MRI sent correspondence to Defendant Civiq Holdings, LLC on August 19, 2016 informing Civiq Holdings, LLC of MRI's previous correspondence with the former Vertigo Digital Displays, now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC.  Letter attached hereto as Exhibit I.

54.    Defendant Civiq Holdings, LLC sent correspondence to MRI on December 27, 2016 responding to MRI's previous correspondence and alleging non-infringement generally and alleging invalidity of some of MRI's patents.  Letter attached hereto as Exhibit J.

55.    In its response, Defendant Civiq Holdings, LLC indicated that Defendant Comark, LLC and/or Comark Holdings, LLC was an affiliate of Defendant Civiq Smartscapes, LLC and/or Civiq Holdings, LLC.  *See* id.

56.    Upon information and belief Civiq Smartscapes, LLC and/or Civiq Holdings, LLC are aware of the correspondence between MRI and Vertigo Digital Displays by way of their acquisition of Vertigo Digital Displays and by way of MRI's correspondence on August

19, 2016 (Exhibit F).

57.    MRI sent correspondence to Defendants Comark, LLC and Comark Holdings, LLC on July 7, 2016 informing Comark, LLC and Comark Holdings, LLC of many of MRI's patents and MRI's believe that they may be infringing MRI's patents.   Letter attached hereto as Exhibit K.

58.    Upon information and belief, Defendants Comark, LLC and Comark Holdings, LLC are aware of the correspondence between MRI and Civiq Smartscapes, LLC and Civiq Holdings, LLC by way of Civiq Smartscapes, LLC and Civiq Holdings, LLC affiliation with Comark, LLC and/or Comark Holdings, LLC.

59.    Upon information and belief, Defendants Comark, LLC and Comark Holdings, LLC are aware of the correspondence between MRI and Vertigo Digital Displays by way of Civiq Smartscapes, LLC and/or Civiq Holdings, LLC acquisition of Vertigo Digital Displays and Civiq Smartscapes, LLC and/or Civiq Holdings, LLC affiliation with Comark, LLC and/or Comark Holdings, LLC.

60.    Upon information and belief MRI has lost sales, revenues, and profits due to Defendants' ongoing infringement of MRI's Patents.

61.    Upon information and belief MRI will continue to lose sales, revenues, and profits if Defendants' infringing activity is not stopped.

62.    MRI owns a family of trademarks ending in "VU" as described in further detail herein. MRI has continuously used its family of marks ending in "VU" from their inception, in commerce, in connection with its display products.

63.    On February 17, 2009 MRI applied for a U.S. registration of the trademark BOLDVU for LCD panels in Class 9.

64.    The application was assigned U.S. Trademark Application Serial No. 77/671,634.

65.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

66.    On August 3, 2010, the BOLDVU mark was granted a federal registration, and was given Registration No. 3,829,138.  A true and accurate copy of the Registration attached hereto as Exhibit L.

67.    On June 1, 2010 MRI applied for a U.S. registration of the trademark SUREVU for optical sensors in Class 9.

68.    The application was assigned U.S. Trademark Application Serial No. 85/051,376.

69.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

70.    On January 11, 2011, the SUREVU mark was granted a federal registration, and was given Registration No. 3,904,224.  A true and accurate copy of the Registration attached hereto as Exhibit M.

71.    On June 15, 2009 MRI applied for a U.S. registration of the trademark AMPVU for power management system for monitoring AC line current which results in adjustment of brightness and fan speed on LCD panels in Class 9.

72.    The application was assigned U.S. Trademark Application Serial No. 77/759,331.

73.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

74.     On August 3, 2010, the AMPVU mark was granted a federal registration, and was given Registration No. 3,829,405.  A true and accurate copy of the Registration attached hereto as Exhibit N.

75.     On June 15, 2009 MRI applied for a U.S. registration of the trademark BRIGHTVU for light sensor, controller module, temperature sensor and integrated fans for LCD panels in Class 9.

76.     The application was assigned U.S. Trademark Application Serial No. 77/759,330.

77.     This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

78.     On August 3, 2010, the BRIGHTVU mark was granted a federal registration, and was given Registration No. 3,829,404.  A true and accurate copy of the Registration attached hereto as Exhibit O.

79.     On May 8, 2012 MRI applied for a U.S. registration of the trademark BASICVU for LCD panels in Class 9.

80.     The application was assigned U.S. Trademark Application Serial No. 85/619,465.

81.     This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

82.     On September 25, 2012, the BASICVU mark was granted a federal registration, and was given Registration No. 4,214,099.  A true and accurate copy of the Registration attached hereto as Exhibit P.

83.     On January 18, 2010 MRI applied for a U.S. registration of the trademark

STATUSVU for electrical system sensors and software for communicating display performance data to a remote location in Class 9.

84.     The application was assigned U.S. Trademark Application Serial No. 77/913,994.

85.     This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

86.     On October 12, 2010, the STATUSVU mark was granted a federal registration, and was given Registration No. 3,862,090.  A true and accurate copy of the Registration attached hereto as Exhibit Q.

87.     On March 9, 2010 MRI applied for a U.S. registration of the trademark ECOVU for liquid crystal display (LCD) and organic light emitting diodes (OLED) monitors in Class 9.

88.     The application was assigned U.S. Trademark Application Serial No. 77/953,881.

89.     This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

90.     On October 1, 2013, the ECOVU mark was granted a federal registration, and was given Registration No. 4,411,350.  A true and accurate copy of the Registration attached hereto as Exhibit R.

91.     On March 11, 2010 MRI applied for a U.S. registration of the trademark DYNAMICVU for liquid crystal display (LCD) monitors in Class 9.

92.     The application was assigned U.S. Trademark Application Serial No. 77/956,652.

93.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

94.    On April 5, 2011, the DYNAMICVU mark was granted a federal registration, and was given Registration No. 3,941,960.   A true and accurate copy of the Registration attached hereto as Exhibit S.

95.    On November 7, 2011 MRI applied for a U.S. registration of the trademark THRUVU for LCD panels in Class 9.

96.    The application was assigned U.S. Trademark Application Serial No. 85/465,674.

97.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

98.    On September 30, 2014, the THRUVU mark was granted a federal registration, and was given Registration No. 4,614,143.   A true and accurate copy of the Registration attached hereto as Exhibit T.

99.    On August 13, 2014 MRI applied for a U.S. registration of the trademark WINDOWVU for LCDs and LCD panels for in-window displays, excluding LCDs and LCD panels intended for use in personal computers, tablets, smartphones, or other personal computing devices in Class 9.

100.    The application was assigned U.S. Trademark Application Serial No. 86/365,376.

101.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

102.    On December 20, 2016, the WINDOWVU mark was granted a federal

registration, and was given Registration No. 5,105,471. A true and accurate copy of the Registration attached hereto as Exhibit U.

103.    On July 23, 2015 MRI applied for a U.S. registration of the trademark BEACONVU for cooler cases for use in convenience and grocery stores, namely, refrigerated merchandise display cases having doors with integrated digital displays in Class 11 and LCD Panels; LCDs; LCD large-screen displays; Electronic displays, namely, signage for digital advertising; Electronic displays, namely, signage in the nature of digital menu boards; electronic displays, namely, digital advertising display signage; Wireless communication devices for voice transmissions and low-powered wireless communication devices for voice transmissions accessories for electronic displays, namely, wireless communication devices for voice transmissions and low-powered wireless communication devices for voice transmissions transmitters and receivers in Class 9.

104.    The application was assigned U.S. Trademark Application Serial No. 86/702,574.

105.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

106.    On February 21, 2017, the BEACONVU mark was granted a federal registration, and was given Registration No. 5,147,439. A true and accurate copy of the Registration attached hereto as Exhibit V.

107.    On October 12, 2015 MRI applied for a U.S. registration of the trademark TOUGHVU for LCD Panels; LCDs; LCD panels intended for outdoor use; LCDs intended for outdoor use; LCD large-screen displays; Electronic displays, namely, signage for digital advertising in Class 9.

108.    The application was assigned U.S. Trademark Application Serial No. 86/785,254.

109.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

110.    On February 21, 2017, the TOUGHVU mark was granted a federal registration, and was given Registration No. 5,147,599.  A true and accurate copy of the Registration attached hereto as Exhibit W.

111.    On October 12, 2015 MRI applied for a U.S. registration of the trademark REMOTEVU for LCD Panels; LCDs; LCD large-screen displays; Electronic displays, namely, signage for digital advertising; Software for remote control of electronic displays in Class 9.

112.    The application was assigned U.S. Trademark Application Serial No. 86/785,257.

113.    This application was made in order to, among other things, protect the good will, good name, and national reputation of MRI and its products.

114.    On February 14, 2017, the REMOTEVU mark was granted a federal registration, and was given Registration No. 5,142,749.  A true and accurate copy of the Registration attached hereto as Exhibit X.

115.    MRI has applied for many more trademarks under the 'VU family of marks that are currently under examination at the United States Patent and Trademark Office and are expected to mature into issued trademark registrations, including but not limited to: TRANSVU,  SERVICEVU,  REPORTVU,  STANDARDVU,  READYVU,  WAY2VU, TAXIVU,  PROTECTVU,  POLRVU,  SELFVU,  FLAVORVU,  FRESHVU,  SMARTVU,

GEOVU, WEATHERVU, PERFORMANCEVU, BESTVU, POPVU, and NEOVU, among others. A true and accurate copy of the trademark status documents showing proof of the filing/status are attached hereto as Exhibit Y.

116.    Many of the aforementioned trademark applications have been issued a notice of allowance and are anticipated to mature to fully issued trademark registrations soon including: TRANSVU, SERVICEVU, REPORTVU, STANDARDVU, READYVU, WAY2VU, TAXIVU, POLRVU, PROTECTVU, SELFVU, and FLAVORVU. A true and accurate copy of the Notice of Allowance for each of these trademark applications is attached hereto as Exhibit Z.

117.    The aforementioned registered trademarks and trademark applications are referred to collectively as the "'VU Family of Marks".

118.    On May 1, 2015, MRI sent correspondence to former Vertigo Digital Displays, now Civiq Smartscapes, LLC and/or Civiq Holdings, LLC, informing them of MRI's 'VU Family of Marks. A true and accurate copy of the letter attached hereto as Exhibit AA.

119.    Upon information and belief, Defendants' were using the brand name "FLEXVU" for at least the Ferro and Totem lines of products.

120.    On May 27, 2015, Vertigo Digital Displays responded that they would change their mark to "VUE." A true and accurate copy of the letter attached hereto as Exhibit BB.

121.    On July 13, 2015, MRI responded that the change was not sufficient.  A true and accurate copy of the letter attached hereto as Exhibit CC.

122.    On August 12, 2015, Vertigo Digital Displays sent an email stating that use of "VUE" was appropriate given its meaning in the French language and confirmed that Vertigo Digital Displays would not be making further changes to its name. Letter attached hereto as

Exhibit DD.

123.    On February 17, 2016, MRI responded that the change was still not sufficient. A true and accurate copy of the letter attached hereto as Exhibit EE.

124.    MRI received no further correspondence from Vertigo Digital Displays on the matter.

125.    Upon information and belief, Defendants' have used the FLEXVU mark since at least May 1, 2015. See e.g., Exhibit AA.

126.    Upon information and belief, Defendants' have used the FLEXVUE mark since at least May 27, 2015. See e.g., Exhibit BB.

127.    Upon information and belief, Defendants' use of the FLEXVU and FLEXVUE marks is in conjunction with the sale of electronic displays and related equipment.

128.    Defendants' use of the FLEXVU and FLEXVUE marks is without authorization or consent from MRI.

129.    Upon information and belief, Defendants' use of the FLEXVU and FLEXVUE marks causes a likelihood of confusion, mistake, or deception in the minds of the public.

130.    Upon information and belief, Defendants' use of the FLEXVU and FLEXVUE marks has caused MRI actual damages in the form of lost sales, loss of goodwill, lost profits, other actual damages, and other irreparable harm.

131.    Upon information and belief, Defendants' FLEXVU and FLEXVUE marks and MRI's 'VU Family of Marks have similar sound, connotation, and/or overall commercial impression.

132.    Upon information and belief, Defendants are also making use of the FLEXVU and FLEXVUE marks in other countries other than the United States without authorization or

consent from MRI.

133.    Upon information and belief, Defendants market several of their products, including the Totem, Ferro, and Pronto series of products, as incorporating a patented "Direct Air Cooling System (DACS)." See e.g., Exhibit FF.

134.    Upon information and belief, Defendants ascribe U.S. Patent No. 8,472,174 (the '174 Patent) to the DACS technology. A true and accurate copy of the patent is attached hereto as Exhibit D.

135.    Upon information and belief, Defendants describe DACS as having an "energy efficient cooling ration… includ[ing] factor programmed analytic fans and 100% redundancy of all cooling components insuring long term 24x7 operational integrity." See id.

136.    Upon information and belief, Defendants further describes DACS as "ensur[ing] product thermal integrity in ambient temperatures ranging from -30C to +50C (-22F to +122F)" and provides "industry leading energy efficiency compared to other power hungry indirect air and AC cooled outdoor displays." See id.

137.    Upon information and belief, Defendants further describes DACS as "reduc[ing] noise, installation costs and maintenance compared to air conditioned systems." See id.

138.    Upon information and belief, the '174 Patent does not claim the features described in paragraphs 132-137.

139.    Upon information and belief, MRI and the Defendants are competitors in the market for electronic digital displays.

140.    Upon information and belief, MRI has lost sales, revenue, profits, and suffered other harm due to the Defendants' claim to allegedly patented technology.

141.    Upon information and belief, MRI has lost sales, revenue, profits, and suffered other harm due to the Defendants' description of their allegedly patented technology.

142.    Upon information and belief, Defendants are jointly and severally liable for the actions and/or omissions complained of herein.

## V.   STATEMENT OF CLAIM

143.    The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

144.    MRI is the owner of all right, title and interest in and to the following United States Letters Patent, duly and legally issued to MRI:

      a.    U.S. Patent No. 8,854,595 (the '595 Patent);

      b.    U.S. Patent No. 9,173,322 (the '322 Patent);

      c.    U.S. Patent No. 8,767,165 (the '165 Patent);

      d.    U.S. Patent No. 8,274,622 (the '622 Patent);

      e.    U.S. Patent No. 8,482,695 (the '695 Patent);

      f.    U.S. Patent No. 8,854,572 (the '572 Patent);

      g.    U.S. Patent No. 9,089,079 (the '079 Patent);

      h.    U.S. Patent No. 8,373,841 (the '841 Patent);

      i.    U.S. Patent No. 8,351,014 (the '014 Patent);

      j.    U.S. Patent No. 9,030,129 (the '129 Patent);

      k.    U.S. Patent No. 9,167,655 (the '655 Patent);

      l.    U.S. Patent No. 8,125,163 (the '163 Patent);

      m.    U.S. Patent No. 8,829,815 (the '815 Patent);

      n.    U.S. Patent No. 9,313,917 (the '917 Patent);

o.    U.S. Patent No. 8,497,972 (the '972 Patent);

p.    U.S. Patent No. 8,016,452 (the '452 Patent); and

q.    U.S. Patent No. 9,448,569 (the '569 Patent).

These patents are also referred hereto as the "patents-in-suit." True and accurate copies of these patents are attached as Exhibit A.

145.    Thus, at all times relevant to this action, Plaintiff, MRI, was, and is, the owner of the patents-in-suit.

146.    MRI also holds the right to sue and recover damages for infringement thereof, including past damages, of the patents-in-suit.

147.    Plaintiff has complied with the statutory requirement (e.g., 35 U.S.C. § 287) of placing a notice of the Letters Patent, for all of the patents-in-suit, on its Website and/or on patented displays it makes and sells. Furthermore, Plaintiff has given Defendants Civiq Smartscapes, LLC and Civiq Holdings, LLC written notice of infringement since, at least, May 17, 2016 by way of their acquisition of Vertigo Digital Displays of Toronto, Canada. Additional letters providing notice of infringement were also sent to Civiq Smartscapes, LLC and Civiq Holdings, LLC on May 24, 2016 and on August 19, 2016. Plaintiff has given Defendants Comark, LLC, and Comark Holdings, LLC written notice of infringement since, at least, May 17, 2016, by way of their association with Defendants Civiq Smartscapes, LLC and/or Civiq Holdings, LLC. Furthermore, written notice of infringement was sent to Comark on July 7, 2016.

148.    By the filing and serving of this Complaint for Patent Infringement, MRI has again given Defendants written notice of their infringement.

## COUNT I—Direct Infringement of the Patents-In-Suit

149.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

150.    Defendants have directly infringed and continue to infringe at least one claim of each of the patents-in-suit in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, their display systems that use the patented systems and methods. By way of example only and without limiting MRI's claims to this specific example, Defendants' acts of making, selling or offering to sell its semi-outdoor and outdoor displays, including displays having air cooling technology using ambient air, and displays having cooling air technology using ambient air and circulating air, amounts to direct infringement of the patents-in-suit.

151.    Furthermore Defendants' acts of making, selling or offering to sell its semi-outdoor and outdoor displays, including the following displays are examples of Defendants' displays that are infringing the patents-in-suit:

- FlexVue line of displays; Pronto series; Totem series; Ferro series; Digital Out of Home Displays; digital menu boards, presell boards, beverage center boards, outdoor billboards.

- The Link display units.

- Outdoor digital displays incorporating Samsung's OH-D line of display products.

- The displays described and listed above are herein referred to as the "Accused Devices."

152.    MRI has provided an exemplary claim chart attached hereto as Exhibit B,

showing in element by element manner the Accused Devices compared to the claims of the patents-in-suit.  MRI does not intend Exhibit B to be comprehensive or limiting and MRI reserves its rights to pursue all available infringement arguments as this case progresses.

153.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the patents-in-suit. Such damages should be MRI's lost profits but in any event no less  than the amount of a reasonable royalty under 35 U.S.C. § 284.  In addition to the loss of sales of displays, MRI's damages further include the loss of monitoring, maintenance, and service contracts with customers who would have purchased the displays and then would have purchased the service contracts, in what is known as so-called "convoyed sales".

154.     Defendants have willfully infringed the patents-in-suit.  For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct.

155.    Defendants will continue to infringe the patents-in-suit unless enjoined by this Court.  MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the patents-in-suit and from further infringement, contributory infringement and/or inducing  infringement of the patents-in-suit.

## COUNT II—Infringement of U.S. Patent No. 8,854,595

156.    The allegations of the preceding paragraphs are incorporated by reference as if

fully set forth herein.

157.    Defendants have directly infringed and continues to infringe at least claims 1 and 4 of the '595 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Accused Devices that use the patented systems and methods.

158.    Upon information and belief, the Accused Devices contain each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

159.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '595 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

160.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

161.    Defendants will continue to infringe the '595 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '595 Patent and from further infringement, contributory infringement and/or inducing infringement of the '595 Patent.

## COUNT III—Infringement of U.S. Patent No. 9,173,322

162.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

163.    Defendants have directly infringed and continues to infringe at least claims 1-5 and 7 of the '322 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Accused Devices that use the patented systems and methods.

164.    Upon information and belief, the Accused Devices contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

165.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '322 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

166.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

167.    Defendants will continue to infringe the '322 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of

infringing the '322 Patent and from further infringement, contributory infringement and/or inducing infringement of the '322 Patent.

## COUNT IV—Infringement of U.S. Patent No. 8,767,165

168.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

169.    Defendants have directly infringed and continues to infringe at least claims 1-3, 5-6, 8-9, and 14 of the '165 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

170.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

171.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '165 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

172.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

173.    Defendants will continue to infringe the '165 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283

preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '165 Patent and from further infringement, contributory infringement and/or inducing infringement of the '165 Patent.

## COUNT V—Infringement of U.S. Patent No. 8,274,622

174.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

175.    Defendants have directly infringed and continues to infringe at least claims 1-2, 5-6, 10, and 17 of the '622 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

176.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

177.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '622 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

178.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

179.    Defendants will continue to infringe the '622 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '622 Patent and from further infringement, contributory infringement and/or inducing infringement of the '622 Patent.

### COUNT VI—Infringement of U.S. Patent No. 8,482,695

180.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

181.    Defendants have directly infringed and continues to infringe at least claims 1-6, 8, 12, and 15 of the '695 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

182.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

183.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '695 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

184.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement

allegations.  These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

185.    Defendants will continue to infringe the '695 Patent unless enjoined by this Court.  MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the  '695 Patent and from further infringement, contributory infringement and/or inducing  infringement of the '695 Patent.

### COUNT VII—Infringement of U.S. Patent No. 8,854,572

186.    The allegations of the preceding paragraphs are incorporated by reference as if fully  set forth herein.

187.    Defendants have directly infringed and continues to  infringe at least claims 1, 4-5, 7-10, 14-18 of the '572 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority,  the Link device that uses the patented systems and methods.

188.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

189.    MRI has been injured and seeks damages to adequately  compensate it for Defendants' infringement of the '572 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less  than the amount of a reasonable royalty under 35 U.S.C. § 284.

190.    Defendants have willfully infringed the patents-in-suit.  For example, after

acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

191.    Defendants will continue to infringe the '572 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '572 Patent and from further infringement, contributory infringement and/or inducing infringement of the '572 Patent.

## COUNT VIII—Infringement of U.S. Patent No. 9,089,079

192.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

193.    Defendants have directly infringed and continues to infringe at least claims 1-5, 7-8, 11, 13-16, and 18 of the '079 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

194.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

195.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '079 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable

royalty under 35 U.S.C. § 284.

196.    Defendants have willfully infringed the patents-in-suit.  For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations.  These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

197.    Defendants will continue to infringe the '079 Patent unless enjoined by this Court.  MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the  '079 Patent and from further infringement, contributory infringement and/or inducing  infringement of the '079 Patent.

## COUNT IX—Infringement of U.S. Patent No. 8,373,841

198.    The allegations of the preceding paragraphs are incorporated by reference as if fully  set forth herein.

199.    Defendants have directly infringed and continues to  infringe at least claims 1-6, 8, 9-11, 13, and 16-17 of the '841 Patent in violation of 35 U.S.C. § 271(a) by making, using,  selling, and/or offering to sell in the United States, without MRI's authority,  the Link device that uses the patented systems and methods.

200.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

201.    MRI has been injured and seeks damages to adequately  compensate it for

Defendants' infringement of the '841 Patent.  Such damages should be MRI's lost profits as a result of the infringement but in any event no less  than the amount of a reasonable royalty under 35 U.S.C. § 284.

202.    Defendants have willfully infringed the patents-in-suit.  For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations.  These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

203.    Defendants will continue to infringe the '841 Patent unless enjoined by this Court.  MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to  sell, and/or import into the United States the products and processes accused of infringing the  '841 Patent and from further infringement, contributory infringement and/or inducing  infringement of the '841 Patent.

## COUNT X—Infringement of U.S. Patent No. 8,351,014

204.    The allegations of the preceding paragraphs are incorporated by reference as if fully  set forth herein.

205.    Defendants have directly infringed and continues to  infringe at least claims 1, 3-4, 7, 9, 11, 14, 16, 19, and 20 of the '014 Patent in violation of 35 U.S.C. § 271(a) by making, using,  selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

206.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced

in the claim chart attached hereto as Exhibit B.

207.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '014 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

208.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

209.    Defendants will continue to infringe the '014 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '014 Patent and from further infringement, contributory infringement and/or inducing infringement of the '014 Patent.

## COUNT XI—Infringement of U.S. Patent No. 9,030,129

210.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

211.    Defendants have directly infringed and continues to infringe at least claims 1-2, 7, 8-10, and 12 of the '129 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Accused Devices that use the patented systems and methods.

212.     Upon information and belief, the Accused Devices contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

213.     MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '129 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

214.     Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

215.     Defendants will continue to infringe the '129 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '129 Patent and from further infringement, contributory infringement and/or inducing infringement of the '129 Patent.

### COUNT XII—Infringement of U.S. Patent No. 9,167,655

216.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

217.     Defendants have directly infringed and continues to infringe at least claims 1-2, 7-10, and 12 of the '655 Patent in violation of 35 U.S.C. § 271(a) by making, using,

selling, and/or offering to sell in the United States, without MRI's authority, the Accused Devices that use the patented systems and methods.

218.    Upon information and belief, the Accused Devices contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

219.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '655 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

220.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

221.    Defendants will continue to infringe the '655 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '655 Patent and from further infringement, contributory infringement and/or inducing infringement of the '655 Patent.

## COUNT XIII—Infringement of U.S. Patent No. 8,125,163

222.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

223.    Defendants have directly infringed and continues to  infringe at least claims 1-2 and 7 of the '163 Patent in violation of 35 U.S.C. § 271(a) by making, using,  selling, and/or offering to sell in the United States, without MRI's authority,  the Accused Devices that use the patented systems and methods.

224.    Upon information and belief, the Accused Devices contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

225.    MRI has been injured and seeks damages to adequately  compensate it for Defendants' infringement of the '163 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less  than the amount of a reasonable royalty under 35 U.S.C. § 284.

226.    Defendants have willfully infringed the patents-in-suit.  For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations.  These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

227.    Defendants will continue to infringe the '163 Patent unless enjoined by this Court.  MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to  sell, and/or import into the United States the products and processes accused of infringing the  '163 Patent and from further infringement, contributory infringement and/or inducing  infringement of the '163 Patent.

## COUNT XIV—Infringement of U.S. Patent No. 8,829,815

228.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

229.    Defendants have directly infringed and continues to infringe at least claims 1-2 and 7-9 of the '815 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, Accused Devices that use the patented systems and methods.

230.    Upon information and belief, the Accused Devices contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

231.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '815 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

232.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

233.    Defendants will continue to infringe the '815 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of

infringing the '815 Patent and from further infringement, contributory infringement and/or inducing infringement of the '815 Patent.

### COUNT XV—Infringement of U.S. Patent No. 9,313,917

234. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

235. Defendants have directly infringed and continues to infringe at least claims 1, 3, 7, 10, and 12-13 of the '917 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

236. Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

237. MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '917 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

238. Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

239. Defendants will continue to infringe the '917 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283

preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '917 Patent and from further infringement, contributory infringement and/or inducing infringement of the '917 Patent.

### COUNT XVI—Infringement of U.S. Patent No. 8,497,972

240.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

241.    Defendants have directly infringed and continues to infringe at least claims 1, 3, and 5 of the '972 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

242.    Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

243.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '972 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

244.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

245.    Defendants will continue to infringe the '972 Patent unless enjoined by this Court.  MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '972 Patent and from further infringement, contributory infringement and/or inducing infringement of the '972 Patent.

### COUNT XVII—Infringement of U.S. Patent No. 8,016,452

246.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

247.    Defendants have directly infringed and continues to infringe at least claims 1-2, 4-6, 9 and 11 of the '452 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority the Ferro and the Totem lines of devices that use the patented systems and methods.

248.    Upon information and belief, the FlexVue line of products, including the Ferro and Totem lines of devices, contain each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

249.    MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '452 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

250.    Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in

bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

251. Defendants will continue to infringe the '452 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '452 Patent and from further infringement, contributory infringement and/or inducing infringement of the '452 Patent.

### COUNT XVIII—Infringement of U.S. Patent No. 9,448,569

252. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

253. Defendants have directly infringed and continues to infringe at least claims 1-10 of the '569 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, without MRI's authority, the Link device that uses the patented systems and methods.

254. Upon information and belief, the Link device contains each and every element of the asserted claims, either literally or under the doctrine of equivalents, as further evidenced in the claim chart attached hereto as Exhibit B.

255. MRI has been injured and seeks damages to adequately compensate it for Defendants' infringement of the '569 Patent. Such damages should be MRI's lost profits as a result of the infringement but in any event no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

256.     Defendants have willfully infringed the patents-in-suit. For example, after acquiring knowledge of the patents-in-suit, Defendants continued with their infringing acts in bad faith without providing a detailed substantive response to MRI's infringement allegations. These acts amount to willful and deliberate acts of infringement and amount to egregious misconduct

257.     Defendants will continue to infringe the '569 Patent unless enjoined by this Court. MRI therefore requests that this Court enter an order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the '569 Patent and from further infringement, contributory infringement and/or inducing infringement of the '569 Patent.

## COUNT XIX - Indirect Infringement of the Patents-In-Suit

258.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

259.     Defendants have, under 35 U.S.C. § 271(b), indirectly infringed, and continue to indirectly infringe the patents-in-suit by, *inter alia*, inducing others to make, use, sell and/or offering to sell displays covered by the patents-in-suit, and distributing, marketing, and advertising those products covered by the patents-in-suit in this judicial district and elsewhere in the United States.

260.     On information and belief, Defendants have actual knowledge of the patents-in-suit. As set forth in detail below, Defendants have actual knowledge or were willfully blind to the fact that the Defendants' products infringe the patents-in-suit.

261.     Despite having such knowledge of the patents-in-suit, for example through

notice letters sent to Defendants as previously discussed, Defendants have continued to make its infringing displays available to its customers.

262.    Defendants' customers directly infringe the patents-in-suit by, for example, using the infringing system.

263.    Defendants are aware that it provides its customers with displays that are used in a manner that knowingly infringes the patents-in-suit, and encourages and instructs customers to use those products in a manner which infringes at least one claim of the patents-in-suit.  For example, Defendants knowingly provide their customers with infringing displays that customers use to infringe the patents-in-suit.   As another example, upon information and belief, Defendants knowingly provide their customers with, *inter alia*: instruction manuals accompanying the purchased infringing displays that instruct a customer on the use of the infringing displays.

264.    Defendants continue to instruct their customers on using the infringing systems.  These instructions evidence clear intent by the Defendants to induce that which Defendants know would be actual infringement of the patents-in-suit on the part of its customers.

265.    Despite actual knowledge, Defendants have actively, and willfully induced the direct infringement of the patents-in-suit by advertising infringing uses of its Accused Devices, offering technical assistance on how to use the products in their intended, infringing manner, and by otherwise encouraging and assisting its partners and their resellers in providing infringing products, technical support, advice and other assistance directly to clients that, in turn, use them to directly infringe the patents-in-suit.

266.    In the alternative, despite actual knowledge of the patents-in-suit, Defendants

were willfully blind to the fact that the actions being induced constituted infringement of the patents-in-suit.  For example, Defendants knew or should have known there was a high probability of infringement of the patents-in-suit (based at least on the notice letters MRI sent to the Defendants), and the Defendants took deliberate actions to avoid learning of the facts. For example, even after MRI sent notice letters to Defendants, Defendants failed to provide MRI with a detailed, substantive response to MRI's allegations of infringement.

267.    Accordingly, Defendants are actively and knowingly aiding and abetting its customers' direct infringement of the patents-in-suit.  As direct and proximate result of Defendants' acts of inducing infringement of the patents-in-suit, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief, of lost profits attributable to the infringements but in any event no less than a reasonable royalty to compensate for Defendants' infringement.

268.    Defendants will continue to induce infringement of the patents-in-suit, causing immediate and irreparable harm unless this Court enjoins and restrains Defendants' activities, specifically the acts of making, using, selling and offering to sell the infringing systems.

269.    The induced infringement by Defendants has, and will, deprive Plaintiff of royalties and other related revenue which Plaintiff would have made or would enjoy in the future, has injured Plaintiff in other respects, and will cause Plaintiff added injury and damages unless Defendants are enjoined from inducing infringement of the patents-in-suit on all infringing systems Defendants will make, use, sell, or offer to sell until the expiration of the patents-in-suit.

270.    On information and belief, Defendants have, under 35 U.S.C. § 271(c), indirectly infringed, and continue to infringe the patents-in-suit by, *inter alia*, selling and

offering to sell, the above mentioned infringing systems covered by the patents-in-suit while knowing that the infringing systems are material to practicing certain claims of the patents-in-suit and have no substantial non-infringing uses, and are known by the Defendants to be especially made or especially adapted for use in an infringement of the patents-in-suit.

271.    Despite having knowledge of the patents-in-suit, Defendants have continued to make its infringing systems available to its customers.

272.    Defendants' customers directly infringe the patents-in-suit by, for example, using the infringing systems.

273.    Defendants make and sell the infringing systems knowing that the infringing systems are especially made and adapted for use in an infringement of the patents-in-suit.

274.    By providing the infringing systems that have no substantial non-infringing uses, Defendants are actively and knowingly contributing to its customers' direct infringement of the patents-in-suit.  As direct and proximate result of Defendants' acts of contributory infringement of the patents-in-suit, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief, in no event less than a reasonable royalty to compensate for Defendants' infringement.

275.    Defendants will continue to contribute to the direct infringement of the patents-in-suit, causing immediate and irreparable harm unless this Court enjoins and restrains Defendants' activities, specifically the acts of making, using, selling and offering to sell the infringing systems.

276.    The contributory infringement by Defendants has, and will, deprive Plaintiff of lost profits or royalties and other related, convoyed revenue which Plaintiff would have made or would enjoy in the future, has injured Plaintiff in other respects, and will cause Plaintiff

added injury and damages unless Defendants are enjoined from contributing to the infringement of the patents-in-suit on all infringing systems Defendants will make, use, sell, or offer to sell until the expiration of the patents-in-suit.

## COUNT XX – Trademark Infringement

277.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

278.     Defendants' use of the FLEXVU and FLEXVUE marks constitutes an infringement of MRI's registered 'VU Family of Marks and causes a likelihood of confusion, mistake, and deception of the public, causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

279.     Upon information and belief, Defendants' acts have been willful, deliberate, and intended to benefit Defendants at MRI's expense.

280.     By reason for the foregoing acts, Defendants are liable to Plaintiff for trademark infringement under 15 U.S.C. § 1114.

## COUNT XXI – False Designation of Origin Under the Lanham Act

281.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

282.     This count arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as amended.

283.     Defendants' use of the FLEXVU and FLEXVUE mark causes a likelihood of confusion, mistake, and deception among the public and others as more fully described above.

284.     The public and others are likely to believe Defendants' goods and services are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way

legitimately connected with Plaintiff, which has caused, and will continue to cause damage and irreparable harm to Plaintiff.

285.    MRI and the Defendants are competitors in the market for electronic displays.

286.    Upon information and belief, MRI has lost sales, revenue, profits, and suffered other actual damages and irreparable harm due to the Defendants' trademark infringement and false designation of origin.

287.    Defendants will continue to infringe the 'VU Family of Marks absent an injunction.

288.    There is no adequate remedy at law such that an injunction protecting MRI's rights is proper.

### COUNT XXII – Trademark Infringement at Delaware Common Law

289.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

290.    Plaintiffs have extensively used their 'VU Family of Marks in connection with the marketing and sale of services and products.

291.    Plaintiffs have established protectable rights at common law in their 'VU Family of Marks.

292.    Defendants' use of the FLEXVU and FLEXVUE mark causes a likelihood of confusion, mistake, and deception among the public and other as more fully described above.

293.    The public and others are likely to believe Defendants' goods and services are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiff, which has caused, and will continue to cause damage and irreparable harm to Plaintiff.

294.    MRI and the Defendants are competitors in the market for electronic displays.

295.    Upon information and belief, MRI has lost sales, revenue, profits, and suffered other actual damages and irreparable harm due to the Defendants' trademark infringement at common law.

296.    Defendants will continue to infringe the 'VU Family of Marks absent an injunction.

297.    There is no adequate remedy at law such that an injunction protecting MRI's rights is proper.

**COUNT XXIII – Deceptive Trade Practices Under Delaware Statutory Law**

298.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

299.    Defendants' conduct, as described in at least paragraphs 277-297, constitutes deceptive trade practices within the meaning of Delaware's Uniform Deceptive Trade Practices Act ("UDTPA"). 6 *Del C.* §§ 2531-2536.

300.    Furthermore, Defendants' have described at least their "Totem" and "Pronto" lines of products as having their patented DACS.

301.    Defendants' describe DACS as having an "energy efficient cooling ration… includ[ing] factor programmed analytic fans and 100% redundancy of all cooling components insuring long term 24x7 operational integrity."

302.    Defendants' further describes DACS as "ensur[ing] product thermal integrity in ambient temperatures ranging from -30C to +50C (-22F to +122F)."

303.    Defendants' further describes DACS as "reduc[ing] noise, installation costs and maintenance compared to air conditioned systems."

304.    The '174 Patent does not claim the features described in the preceding paragraphs.

305.    Defendants' conduct constitutes deceptive trade practices within the meaning of Delaware's Uniform Deceptive Trade Practices Act ("UDTPA"). 6 *Del C.* §§ 2531-2536.

306.    Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendants to cease this deceptive trade practice, as well as money damages, together with attorney's fees pursuant to UDTPA. 6 *Del C.* § 2533(b).

## COUNT XXIV – Deceptive Trade Practices, Unfair Competition, and Injury to Business Reputation, Under the Common Law of the State of Delaware

307.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

308.    Defendants' conduct, as described in at least paragraphs 298-306, constitutes deceptive trade practices, unfair competition, and injury to business reputation in violation of Plaintiff's rights under the common law of the State of Delaware.

309.    Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendants to cease these illegal activities, as well as money damages, together with any other remedy the Courts sees fit.

## COUNT XXV – Injunctive Relief for Trademark and/or Unfair Competition Claims (Counts XX-XXIV)

310.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

311.    MRI is entitled to preliminary and permanent injunctive relief enjoining Defendants from infringing the 'VU Family of Marks.

312.    MRI is likely to succeed on the merits of their underlying trademark and/or unfair competition related claims (Counts XX-XXIV), because there is a strong likelihood of confusion to consumers.

313.    If Defendants are not enjoined, MRI will continue to suffer irreparable harm including but not limited to, loss of business, competitive advantage, and goodwill, for which there is no adequate remedy at law.

314.    The potential injury to Defendants is minimal and does not outweigh the potential injuries to MRI if Defendants are not enjoined.

**COUNT XXVI – Injunctive Relief for Patent Claims (Counts I-XIX)**

315.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

316.    MRI is entitled to preliminary and permanent injunctive relief enjoining Defendants from infringing the Patents at Issue.

317.    MRI is likely to succeed on the merits of their underlying patent related claims (Counts I-XIX), because there is a strong likelihood of success on the merits.

318.    If Defendants are not enjoined, MRI will continue to suffer irreparable harm including but not limited to, loss of business, sales, profits, revenue, and competitive advantage, for which there is no adequate remedy at law.

319.    The potential injury to Defendants is minimal and does not outweigh the potential injuries to MRI if Defendants are not enjoined.

**JURY DEMAND**

320.    Plaintiff requests a jury trial of all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, MRI respectfully requests the following relief:

        a.      A judgment in favor of MRI that each Defendant has infringed the patents-in-suit, whether literally or under the doctrine of equivalents, as described herein;

        b.      A judgment and order requiring each Defendant to pay MRI its damages, costs, expenses, and pre-judgment and post-judgment interest for each Defendant's infringement of the patents-in-suit as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

        c.      An accounting of damages to MRI arising from Defendants' acts of infringement, contributory infringement, and/or active inducement of infringement, the damages including lost profits, but in no event less than a reasonable royalty, to be paid by Defendants as a result of Defendants' infringing activities;

        d.      An order under 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from continuing to make, use, sell, offer to sell, and/or import into the United States the products and processes accused of infringing the patents-in-suit and from further infringement, contributory infringement and/or inducing infringement of the patents-in-suit;

        e.      A finding that this is an "exceptional case" under 35 U.S.C. § 285;

        f.      For an award to MRI of three times the actual damages for

willfully infringing the patents-in-suit;

g.      That Defendants be found to have infringed MRI's rights in the 'VU Family of Marks, and that Defendants be found liable on each of the trademark and/ or unfair competition related causes of action (Counts XX-XXIV) enumerated in this Complaint;

h.      That Defendants and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, and each of them be preliminarily and permanently enjoined from infringing the 'VU Family of Marks, and from unfairly competing with Plaintiff in any other manner;

i.      That Defendants be required to cease use of the FLEXVUE mark and/or any mark confusingly similar thereto in all forms, including as a fictitious business name or trade name;

j.      That Defendants deliver up and/or destroy any and all insignias bearing the FLEXVUE mark and/or any mark confusingly similar thereto, in its possession as well as all labels, literature, signage and advertisements bearing the FLEXVUE mark, together with any means for producing the same;

k.      That Defendants be compelled to account to MRI for any and all profits derived from their illegal acts complained of herein;

l.      That the Court declare this to be an exceptional case and award Plaintiff its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

m.      That the Defendants be found to have unfairly competed with

MRI;

n.    That Defendants be preliminarily and permanently enjoined from participating in their illegal activities as described herein;

o.    That the Court grant MRI any other remedy to which they are entitled as provided under Federal or State law;

p.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 14, 2017    */s/ Ryan P. Newell*
Arthur G. Connolly, III (Delaware Bar #2667)
Ryan P. Newell (Delaware Bar #4744)
**CONNOLLY GALLAGHER LLP**
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302)757-7300
Facsimile:  (302)757-7299
Email: rnewell@connollygallagher.com
aconnolly@connollygallagher.com

Jeffrey S. Standley (Ohio Bar #0047248)
James Lee Kwak (Ohio Bar #0066485)
F. Michael Speed, Jr.  (Ohio Bar #0067541)
Applications for *Pro Hac Vice* to be Submitted
**Standley Law Group LLP**
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Facsimile: (614) 792-5536
Email:  litigation@standleyllp.com
jstandley@standleyllp.com
jkwak@standleyllp.com
mspeed@standleyllp.com

*Attorneys for Plaintiff*
*Manufacturing Resources International, Inc.*