## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Manufacturing Resources International, Inc.,

Plaintiff,

v.

Civiq Smartscapes, LLC, et al.,

Defendants.

C.A. No. 1:17-cv-00269-RGA

███████████████████

**Public Version:  Filed May 13, 2019**

## BRIEF IN SUPPORT OF PLAINTIFF'S (MRI'S) RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO EXCLUDE CERTAIN EXPERT TESTIMONY

**Of Counsel:**

Jeffrey S. Standley (Ohio Bar #0047248)
James Lee Kwak (Ohio Bar #0066485)
F. Michael Speed, Jr.  (Ohio Bar #0067541)
**STANDLEY LAW GROUP LLP**
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Facsimile: (614) 792-5536
jstandley@standleyllp.com
jkwak@standleyllp.com
mspeed@standleyllp.com

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Kyle Evans Gay (#5752)
**CONNOLLY GALLAGHER LLP**
1201 North Market St., 20th Floor
Wilmington, DE  19801
Telephone:  (302)757-7300
Facsimile:  (302)757-7299
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
kgay@ connollygallagher.com

*Attorneys for Plaintiff*
*Manufacturing Resources International, Inc.*

Dated:  May 6, 2019

## TABLE OF CONTENTS

I.   SUMMARY OF THE ARGUMENT .................................................................. 2

II.  ARGUMENT   ........................................................................................... 2

A.  CIVIQ'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.......... 2

1.   THERE ARE GENUINE ISSUES OF FACT WHETHER THE CLAIMED
     LIMITATIONS OF THE '322 PATENT READS ON THE ACCUSED
     DEVICES ..................................................................................... 2

2.   THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT CIVIQ
     AND ITS CUSTOMERS HAVE DIRECTLY INFRINGED CLAIMS 1 AND 2
     OF THE '325 PATENT .................................................................. 4

     a)  The only claim limitation that Civiq has previously alleged is not found in  the
         accused Link device is ████████████████████ ...................... 4

     b)  Civiq's only noninfringment argument is based on an improper narrowing  of
         the claimed limitati ████████████████████
         ████████████████ .................................................. 4

     c)  ████████████████████████████████████████
         ████████████████████████████████████████ 5

3.   THE ASSERTED CLAIMS OF THE '287 PATENT ARE SUPPORTED BY
     THE WRITTEN DESCRIPTION ......................................................... 6

     a)  Claims included in an original patent application are part of the written
         description .......................................................................... 6

     b)  The very language of claim 18 that Civiq alleges is not supported by the  ........
         written description was present in the originally filed claims ......................... 7

4.   MRI HAS PROVIDED EVIDENCE OF CONTINUOUS PATENT MARKING  8

B.  CIVIQ'S *DAUBERT* ARGUMENTS ARE WITHOUT MERIT ............................. 11

1.   NONE OF THE OPINIONS OF MRI'S DAMAGES EXPERT, MS. MELISSA
     BENNIS, SHOULD BE EXCLUDED FROM TRIAL ....................... 12

     a)  Ms. Bennis's Opinions on Lost Profits are Admissible .................................. 12

i

(1) Civiq Incorrectly Asserts that Ms. Bennis's Calculation of MRI's Lost Profits Relies Entirely on Information ███████████████ ............................................................... 13

    (a) ████████████████████████████████ .................................. 13

    (b) ██████████████████████████ . ......... 14

    (c) Ms. Bennis's Lost Profit Calculations Rely on Documents Produced by Civiq in Discovery and MRI's Own Internal Information. ........................................................................ 15

    (d) MRI Provided an Exemplary Calculation of Lost Profits in July 2018 in Response to Civiq's Discovery Requests........ 16

    (e) Not Only Has ██████████████ Been Produced by Civiq in Discovery, but MRI Reviewed ███████████████ .............................................................. 18

(2) Ms. Bennis's Opinions on Lost Profits Should Not be Excluded over Civiq's incorrect assertions that MRI has failed to establish "but for" causation or Demand for the Patented Products ............................... 19

    (a) It is Reasonable to conclude that MRI would have sold the Entire Outdoor Kiosk.......................................................... 20

    (b) Ms. Bennis's Opinions Relating Demand for the Patented Product are Reliable and Admissible................................... 22

b)  Ms. Bennis's Opinions Regarding a Reasonable Royalty Rate are also Admissible ............................................................................................... 24

(1) Ms. Bennis's Opinion on a Reasonably Royalty was developed using Accepted Principles and Methods and is Properly Tied to the Facts of this Case and is Admissible ................................................................. 25

(2) Ms. Bennis's Application of the Reasonable Royalty Rate to the Sale Price of Civiq's Smart Kiosk Product is Supported by the Evidence of this Case and does not Render her Opinion Inadmissible ..................... .............................................................................................................. 28

2. NONE OF MRI'S EXPERTS' OPINIONS REGARDING NON-INFRINGING ALTERNATIVES SHOULD BE EXCLUDED ................................................... 31

3. DR. SILZARS'S OPINIONS REGARDING SECONDARY CONSIDERATIONS SHOULD NOT BE EXCLUDED .................................... 38

   a) It is proper for an expert to rely on facts provided by others, especially when the facts will be admissible at trial (Rule 703) ............................... 38

   b) A nexus is presumed when the objective evidence of secondary considerations is tied to a specific product(s) embodying the claimed invention ...................................................................................................... 39

   c) Dr. Silzars has provided a nexus between the evidence of secondary considerations and the merits of the claimed invention ........................... 40

III. CONCLUSION  ......................................................................................................... 40

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                      **Page No.**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    No. 06-11109, 2008 WL 364401
    (D. Mass. Feb. 8, 2008)...........................................................................................33

*Apple Inc. v. Motorola, Inc.*,
    *757 F.3d 1286 (Fed. Cir. 2014)*...............................................................27, 33

*Aro Mfg. Co. v. Convertible Top Co.*,
    377 U.S. 476 (1964)....................................................................................33

*Asia Vital Components Co. v. Asetek Danmark A/S*,
    No. 16-cv-07160-JST, 2019 U.S. Dist. LEXIS 50885
    (N.D. Cal. Mar. 15, 2019)...................................................................8, 11

*Bayer Intellectual Prop. GmbH v. Aurobindo Pharma Ltd.*,
    No. 15-902, 2018 U.S. Dist. LEXIS 116931
    (D. Del. July 13, 2018).............................................................................39

Bic Leisure Products, Inc. v. Windsurfing Int'l, Inc.,
    *1 F.3d 1214 (Fed. Cir. 1993)*...................................................................13

Bio-Rad Labs., Inc. v. 10X Genomics, Inc.,
    C.A. No. 15-152, 2018 WL 4691047 (D. Del. Sep. 28,
2018)   21

*Breidor v. Sears, Roebuck and Co.*,
    722 F.2d 1134 (3d Cir. 1983)...................................................................19

*Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*,
    229 F.3d 1120 (Fed. Cir. 2000)...............................................................39

*Calico Brand, Inc. v. Ameritek Imps., Inc.*,
    527 F. App'x 987 (Fed. Cir. 2013)...........................................................24

*Cornell Univ. v. Hewlett-Packard Co.*,
    609 F. Supp. 2d 279 (N.D.N.Y. 2009).....................................................30

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
    246 F. 3d 1336 (Fed. Cir. 2001)...............................................................20

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993)............................................................................................2, 11

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009)..............................................................................23

*Electro Sci. Indus. v. Dynamic Details, Inc.*,
    307 F.3d 1343 (Fed. Cir. 2002)................................................................................3

*EMC Corp. v. Pure Storage Inc.*,
    154 F. Supp. 3d 81 (D. Del. 2016)...........................................................................37

*Ericsson, Inc. v. D-Link Sys.*,
    773 F.3d 1201 (Fed. Cir. 2014).........................................................................29, 31

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018)....................................................................26, 29, 31

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)...............................................................25, 28, 29

*Glob. Traffic Techs., LLC v. Morgan*,
    620 F. App'x 895 (Fed. Cir. 2015) ...........................................................................9

*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999).........................................................................33, 37

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)................................................................................25

*Immersion Corp. v. HTC Corp.*,
    C.A. No. 12-259, 2015 WL 834209
    (D. Del. Feb. 24, 2015) ...........................................................................................22

*Inline Connection Corp. v. Earthlink, Inc.*,
    684 F. Supp. 2d 496 (D. Del. 2010)...........................................................................7

*In re Biogen '755 Patent Litig.*,
    2017 U.S. Dist. LEXIS 221500 (D.N.J. Dec. 22, 2017)............................................32

*King Instruments Corp. v. Perego*,
    65 F.3d 941 (Fed. Cir. 1995)..................................................................................12

*Laser Dynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)……………………………………………………26, 30

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)…………………………………………………27, 29

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017)..............................................................................7

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
   429 F.3d 1344 (Fed. Cir. 2005)............................................................................26

*MiiCS & Partners, Inc. v. Funai Elec. Co.*,
   No. 14-804-RGA, 2017 U.S. Dist. LEXIS 201511
   (D. Del. Dec. 7, 2017)..........................................................................................28

*Mobius Mgmt. Sys. V. Acartus, Inc.*,
   2006 U.S. Dist. Lexis 44341 (D. Del. 2006)……………………………………..14

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
   271 F. Supp. 3d 990 (E.D. Wis. 2017)..................................................................10

*Nat'l Prods. v. Arkon Res., Inc.*,
   No. CV 18-02936 AG (SSx), 2019 U.S. Dist. LEXIS 42119
   (C.D. Cal. Jan. 9, 2019) ......................................................................................9, 10

*Parallel Iron LLC v. NetApp, Inc.*,
   84 F. Supp.3d 352 (D. Del. 2015)……………………………………………..14

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir. 1978)……………………………………………13, 19

*Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.*,
   No. 16-187-LPS, 2018 U.S. Dist. LEXIS 854769
   (D.Del. May 22, 2018)…………………………………………………………26, 27

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995)..............................................................................13, 19

*Sentry Protection Products, Inc. v. Eagle Manufacturing Co.*,
   *400 F.3d 910 (Fed. Cir. 2005)*..............................................................................10

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989) ............................................................................22

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..................................................................................25

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)..................................................................................27

*WhitServe, LLC v. Computer Packages Inc.*,
  694 F.3d 10 (Fed. Cir. 2012)......................................................................................28

**Other Authorities**

F.R.E. 703 .............................................................................................................................12

35 U.S.C. § 287..................................................................................................................8

35 U.S. Code § 284..........................................................................................................24

## EXHIBIT LIST

| | |
|---|---|
| Exhibit AAAA | [SEALED] Declaration of Aris Silzars in Support of MRI's Response to Civiq's Motion for Summary Judgment |
| Exhibit BBBB | '287 patent file history (MRI00320697-MRI00320803) |
| Exhibit CCCC | Provisional Application Serial No. 61/053,713 |
| Exhibit DDDD | [SEALED] Attachment 1 to MRI's Supplemental Objections and Responses to Civiq Interrogatories 1 and 10 |
| Exhibit EEEE | MRI00013422-MRI0013433, MRI00013574-MRI00013594 and MRI00324198-MRI00324236 |
| Exhibit FFFF | MRI00324237-MRI00324240 |
| Exhibit GGGG | [SEALED] Declaration of Bill Dunn |
| Exhibit HHHH | [SEALED] MRI00009171 |
| Exhibit IIII | [SEALED] Deposition Transcript of Peter Kaszycki |
| Exhibit JJJJ | [SEALED] Declaration of Steve Stoeffler |
| Exhibit KKKK | Civiq's First Set of Requests for Production of Documents and Things to Plaintiff (Nos. 1-117) |
| Exhibit LLLL | [SEALED] MRI00023575 |
| Exhibit MMMM | [SEALED] CIVIQ0135948 |
| Exhibit NNNN | [SEALED] Expert Report of Anthony Sharp Regarding Noninfringing Alternatives |
| Exhibit OOOO | [SEALED] ████████████████ |
| Exhibit PPPP | [SEALED] Declaration of James Kwak |
| Exhibit QQQQ | [SEALED] MRI00324242 |

# I.   SUMMARY OF THE ARGUMENT

Civiq's motions for summary judgment should be denied as there are genuine issues of fact that preclude a finding of summary judgment.  Civiq asks the Court to exclude certain opinions of MRI's expert witnesses Ms. Bennis and Dr. Silzars under *Daubert*.  But, the methodology used, facts relied upon, and law applied by these witnesses were reliable, reasonable, and correct respectively.  MRI has provided expert opinions that will aid the jury in this case and which should not be excluded.  Any criticism of these witnesses should be addressed by the Defendants on cross examination or through the presentation of their own expert witnesses.

# II.   ARGUMENT

## A.  CIVIQ'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### 1.   THERE ARE GENUINE ISSUES OF FACT WHETHER THE CLAIMED LIMITATIONS OF THE '322 PATENT READS ON THE ACCUSED DEVICES

Civiq's non-infringement argument of claim 7 of the '322 patent is based on Civiq's expert's opinion that the ███████████████████████████████████████████████

████████████████████████████████████████ *Id*. at pgs. 5-7.  However, MRI's expert has opined that the accused devices infringe based on his opinion that the ██████

█████████████████████████████████████████████████████████████████

████████████████████ Ex.  AAAA, para. 12; D.I. 219, Exhibit 1 to Ex. G Claim Chart, pg. 37-38, 46-47, 53, 56, 62-63,  attached to Opening Infringement Expert Report of Dr. Aris Silzars.[1]

---

[1] ███████████████████████████████████ has not been construed, and the parties have agreed to apply the plain and ordinary meaning of these terms.  D.I. 123, 150, 153, 181.

MRI's application of the ███████████████████████████████████████ ██████████████████████████████ in the accused devices is supported by the plain and ordinary meaning of the terms.  D.I. 219, Ex. G, '322 claim chart.  Ex.  AAAA, para. 13.   The ████████████████████████████████████████████████████████████████ D.I. 219, Ex. G, '322 claim chart, claim 7 ('322 patent) (*emphasis added*).    There is no dispute that █████████ ██████████████████████████████████. D.I. 219, Ex. G, '322 claim chart, pg. 56.  Ex. AAAA, para. 14; D.I. 203, pg. 5 (Civiq calls the ████████████████████████████████ ████████"); D. I. 220, Ex. AA, Blonder depo. tr. 12:2-14:6; 63:2-64:13 (Civiq's expert stating the ████████████████████████████████████████████████ Thus, a reasonable jury could find that because the █████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████"

These differences between how Civiq and MRI read the ███████████████████████ ████████████████████████████████ onto the accused devices are genuine issues of fact that preclude a finding of noninfringement of claim 7 of the '322 patent as Civiq urges.   The comparison of the claims of patent to the accused device to determine infringement is a question of fact.  *Electro Sci. Indus. v. Dynamic Details, Inc., 307 F.3d 1343, 1350 (Fed. Cir. 2002).*

Alternatively, summary judgment of noninfringement is not proper as MRI has provided evidence of infringement under the doctrine of equivalents.  D.I. 219, Ex. H, para. 32, Ex. AAAA, para. 15; D.I.219, Ex. G, '322 claim chart, page 56, Ex.  AAAA, para. 16.[2]  Civiq employees also testified that ████████████████████████████████████████████████████

---

[2] These statements by MRI's expert Aris Silzars is supported by his submitted expert reports. D.I. 219, Exhibit 1 to Exhibit G Claim Chart, pg. 37-38, 46-47, 53, 56, 62-63,  attached to Opening Infringement Expert Report of Dr. Aris Silzars;  D.I. 219, Ex. H, para. 32.

███████████████████████████████████████ D.I. 220, Ex. M (Parag Shah

deposition tr.), 171:24 –175:04 (discussing ████████████ Ex. 20 (CIVIQ000648), D.I. 220,

Ex. Y). Because there are genuine issues of fact relating to how the ordinary meaning of the

claim limitation ███████████████████████ reads onto the accused devices,

summary judgment of noninfringement of claim 7 of the '322 patent is not proper.

2.     THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT CIVIQ
       AND ITS CUSTOMERS HAVE DIRECTLY INFRINGED CLAIMS 1 AND 2
       OF THE '325 PATENT

MRI filed a summary judgment motion that there are no genuine issues of fact relating to the

*infringement* of claims 1 and 2 of the '325 patent.  D.I. 212, pgs. 24-27.   MRI incorporates its

arguments and stated facts from its opening summary judgment motion herein by reference.

a)     The only claim limitation that Civiq has previously alleged is not found in
       the accused Link device is ███████████████████████

As explained in MRI's opening motion for summary judgment, the only claim limitation

that Civiq and its expert have previously alleged is not found in the accused Link device is the

███████████████████████." D.I. 212, pgs. 25-26, SOF, paras. 3-5.

b)     Civiq's only noninfringment argument is based on an improper narrowing
       of the claimed limitation ████████████████████████
       ████████████████████████

Civiq's accused products have █████████████████ as the patent shows and

requires. As explained in MRI's opening summary judgment brief, Civiq's attempt to require the

███████████████████ ██████████████ ignores the ordinary meaning of

███████████████████████████████████████ and

ignores the established meaning of "comprising" as an open-ended term that the use of the

indefinite article "a" or "an" generally means "one or more." *Id*.  Because Civiq's only

---

[3] D.I. 212, SOF, para. 38.

noninfringement argument relating to the '325 patent is based on an improper claim construction, there is no genuine issue of fact relating to the infringement of claims 1 and 2 of the '325 patent. *Id.*

If the Court finds that the ███████████████████████████████

██████████████████████████████████████████████████ as argued by Civiq), there is no genuine issue of material fact that the accused Link device infringes the asserted claims 1 and 2 of the '325 patent.



███████████████████████████████████ D.I. 212, SOF paras. 38-41.

As explained in MRI's opening brief on summary judgment, the █████████████

████████████████████████████████████████ *Id.* at pgs. 25-26. █████████

█████████████████████████████████████████████████████████████

there is no genuine issue of fact that the Link device infringes claims 1 and 2 of the '325 patent.

c) ████████████████████████████████████████

The only claim limitation that Civiq and its expert has previously alleged is not found in the accused Link device is the █████████████████████." D.I. 212, pg. 25; SOF paras. 3-5. Civiq never raised the noninfringement argument relating to █████████████ in response to MRI's interrogatory request 6 asking Civiq to state its noninfringement contention.

D.I. 219, Ex. F.  Civiq's expert also did not raise this noninfringement argument in his submitted

expert report.  D.I. 219, Ex. I.



D.I. 212, SOF

paras. 39-41.

Civiq's noninfringement argument relating to the ███████ raised here for the first

time, is again based on their incorrect claim interpretation of the ██████████

██████████████████ which MRI disputes (again based on the ordinary

meaning of ███████ and based on the established meaning of "comprising" and "a" or "an" as

used in patents).  D.I. 212, pgs. 25-27.   Based on the correct interpretation of the claims, ██████

████████████████████████████

████████████████████████ The *Becton*

case that Civiq relies on is not dispositive as the facts of that case are different from the present

case.  In *Becton*, the patentee was attempting to read the two separately claimed structures onto

the exact same structural component in the accused device.   On the contrary, as explained

above, the ████████████████████████

████████████████████████████

████████████████████

3.    THE ASSERTED CLAIMS OF THE '287 PATENT ARE SUPPORTED BY
THE WRITTEN DESCRIPTION

a)    Claims included in an original patent application are part of the written
description

Civiq's motion with respect to the written description requirement should be denied as

there is no genuine issue of fact that the ████████████████████

███████████████████████████████████████

████ is supported by the written description of the original patent application as filed.

An adequate written description must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the applicant] was in possession *of the invention.  Inline Connection Corp. v. Earthlink, Inc., 684 F. Supp. 2d 496, 527 (D. Del. 2010)*.   Original claims are part of the original specification and in many cases will satisfy the written description requirement.  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1297 (Fed. Cir. 2017) (finding that the claims were supported by the written description as the very language of claim 1 which the court held was not supported by the specification was present in the originally-filed claims.)[4]

       b)      The very language of claim 18 that Civiq alleges is not supported by the written description was present in the originally filed claims

Original claim 18 of the '287 patent as filed includes the limitation "a *rear cooling chamber* positioned behind the electronic display and *containing an electrical component which is electrically connected to the electronic display*." Ex. BBBB, '287 patent file history (MRI00320697) at p. 89 (page 14 of the originally filed patent application) (*emphasis added*). Disclosure of a rear cooling chamber/plenum containing an electronic component also appears in Claims 9 and 15 of the original claims. *Id*. at pp. 89-90.

A person of ordinary skill in the art would fully comprehend the plain meaning of the disputed language of Claim 18, and said language was disclosed in the specification of the '287 patent by way of its inclusion in original Claim 18, as well as original Claims 9 and 15.  D.I. 220,

---

[4] This is not a case that raises genus/species concerns that have caused Courts to question whether originally filed claims satisfy the written description requirement.  *Mentor Graphics Corp.*, 851 F.3d at 1297.

Ex. W, Ex.  AAAA, para. 17.    Because the exact language that Civiq alleges is not supported by

the written description is found in the claims of the original patent application as filed, there is no

genuine issue of fact that Claim 18 is supported by the written description.

As a further example of written description support, Provisional Application Serial No.

61/053,713 ((Ex. CCCC), para. [0029], [0039]-[0040]; fig. 3-5), which the '287 claims priority

to and incorporates by reference, describes the claimed limitations of a rear cooling

chamber…..containing an electrical component which is electrically connected to the electronic

display."   D.I. 213, Ex. D, '287 patent, 1:43-54; see, e.g., 37 C.F.R. 1.57 (allowing incorporation

by reference); see also, Ex. DDDD, table section relating to claim 18, '287 patent.

### 4.    MRI HAS PROVIDED EVIDENCE OF CONTINUOUS PATENT MARKING

The Court should deny Civiq's request for summary judgment, with respect to the '633

and '595 patents, that MRI is not entitled to damages before actual notice, because MRI can

prove consistent and continuous patent marking in compliance with the virtual patent marking

requirements of 35 U.S.C. §287.[5]    To satisfy the patent marking requirements, a patentee must

mark, with the relevant patent number, substantially all of the patented products in a substantially

consistent and continuous manner.  *Asia Vital Components Co. v. Asetek Danmark A/S*, No. 16-

cv-07160-JST, 2019 U.S. Dist. LEXIS 50885, at *58-60 (N.D. Cal. Mar. 15, 2019).   A patentee

can satisfy this "marking" requirement of § 287 by fixing thereon the word 'patent' or the

abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public

without charge for accessing the address, that associates the patented article with the number of

the patent.  35 U.S.C. § 287(a).  Whether a patentee has complied with the marking statute is a

---

[5]

question of fact.  *Nat'l Prods. v. Arkon Res., Inc.*, No. CV 18-02936 AG (SSx), 2019 U.S. Dist.

LEXIS 42119, at *49-52 (C.D. Cal. Jan. 9, 2019).  Because the purpose of the marking statute is

to provide constructive notice to the public, moreover, the Courts apply a rule of reason analysis

in determining when substantial compliance may be found to satisfy the marking statute.  *Glob.*

*Traffic Techs., LLC v. Morgan*, 620 F. App'x 895, 905 (Fed. Cir. 2015).

     As outlined below, MRI has provided evidence demonstrating that MRI has continuously

marked substantially all of its patented products by labeling them with the word "patent" and an

address to a Website that associates the patented article with the patent number(s).    Ex. GGGG,

para. 7,  For example, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ Ex. EEEE (MRI00013422,

MRI00013574, and MRI00324198-MRI00324235); sample product patent marking labels for

MRI products with an address to MRI's/LG-MRI's virtual patent marking Websites, Ex. FFFF

(MRI00324237-MRI00324240)[6].

     These corroborating documents, along with the declaration of Bill Dunn attached (Ex.

GGGG, paras. 7-14), ██████████████████████████████

██████████████████████████ compliance with 35 U.S.C. 287, as follows ████

████████████████████████████

---

[6] ████████████████████████████████████████████

       ██ x. GGGG, para. 8. ██████████████████████████████

████████████████████████████████████████

███████████████████ Ex. GGGG., para. 10.

This evidence also demonstrates that MRI's virtual patent marking Website associates the listed

MRI patent numbers with its LCD display products.  *See*, e.g., Ex. GGGG, para. 11; Ex. EEEE,

MRI00324215 (associating the listed MRI patents as "LCD display patents" and stating "[o]ne or

more of the above listed MRI patents may be used by LG-MRI products under license from

MRI, Inc.")   The MRI labels also label the patented displays as "CoolVu" products which refers

to MRI's patented display cooling technology.  Ex. GGGG, para. 12 (citing to Ex. HHHH

(MRI00009171); Ex. FFFF; Ex. IIII, 104:12-25).

MRI has provided more than enough evidence to create a genuine issue of fact that MRI

has substantially complied with the virtual marking requirements of § 287.   Other federal courts

have denied motions for summary judgment motions with similar, or even less, evidence of

marking.  *Nat'l Prods. v. Arkon Res., Inc.*, No. CV 18-02936 AG (SSx), 2019 U.S. Dist. LEXIS

42119, at *49-52 (C.D. Cal. Jan. 9, 2019) (recent 2019 case where the Court found a virtual

patent marking Website that listed patents but did not identify specific patents with specific

products was sufficient evidence to deny summary judgment); *Milwaukee Elec. Tool Corp. v.

Snap-On In*c., 271 F. Supp. 3d 990, 1022 (E.D. Wis. 2017) (finding that one photo of a properly

marked product with other declarations by the patentee were enough to deny summary judgment

relating to inadequate marking); *Sentry Protection Products, Inc. v. Eagle Manufacturing Co.*,

---

[7] After listing the '633 and '595 patents on the MRI virtual patent marking Websites, they have
remained on the Websites to the present date. Ex. GGGG, para. 13.

400 F.3d 910, 918 (Fed. Cir. 2005) (finding that an affidavit generally stating the products were

marked together with documents showing sales in that period was sufficient to overcome

summary judgment); *Asia Vital Components Co. v. Asetek Danmark A/*S, No. 16-cv-07160-JST,

2019 U.S. Dist. LEXIS 50885, at *58-60 (N.D. Cal. Mar. 15, 2019) (finding that producing five

products in discovery as samples of marked products was sufficient even though the patentee

sold over 5 million patented products).[8]

The evidence demonstrates that MRI has been continuously and consistently marking

substantially all of its patented products with the '633 and '595 patents since as early as

December 4, 2014 to the present date.  Ex. GGGG, para. 14   As such Civiq's summary

judgment request that MRI is not entitled to damages before actual notice with respect to the

'633 and '595 patents should be denied.

**B.      CIVIQ'S *DAUBERT* ARGUMENTS ARE WITHOUT MERIT**

Civiq has also filed various "*Daubert* arguments" asking the Court to find that certain

opinions of MRI's experts, Melissa Bennis and Dr. Silzars, should be excluded from trial.  But,

contrary to Civiq's assertions, these witnesses have performed an in-depth analysis of the facts

and documents of this case and have formed opinions using reliable methods and proper legal

standards.

The framework for the legal admission of expert testimony is provided by the Federal

Rules of Evidence in conjunction with *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)

and its progeny.  The standard for determining whether expert testimony is admissible focuses on

principles and methodology, not on the conclusions generated by the expert.  *Daubert*, 509 U.S.

---

[8] Civiq fails to cite to any case law support for their argument that each and every MRI product
*number* (as opposed to products in general) must be associated with the relevant patent numbers.

11

at 595.  "An expert may base opinions on facts or data in the case that the expert has been made

aware of or personally observed.  If experts in the particular field would reasonably rely on those

kinds of facts or data in forming an opinion on the subject, they need not be admissible for the

opinion to be admitted."  FED. R. EVID. 703. "A judge must be cautious not to overstep its

gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own

preferred methodology, or judge credibility, including the credibility of one expert over another."

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 – 15 (Fed. Cir. 2014).  The proper method to

challenge the weight of an expert's testimony is not preclusion, but rather "[v]igorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof."

*See Daubert*, 509 U.S. at 596.  The opinions of Ms. Bennis and Dr. Silzars exceed the

requirements of the Federal Rules of Evidence and *Daubert*.

> 1. NONE OF THE OPINIONS OF MRI'S DAMAGES EXPERT, MS. MELISSA
>    BENNIS, SHOULD BE EXCLUDED FROM TRIAL

Civiq seeks to prevent MRI from presenting its side of the damages case to the jury by

excluding MRI's expert witness Ms. Bennis.  The gatekeeping role of the judge being limited to

excluding testimony based on unreliable principles and methods is "particularly essential in the

context of patent damages."  *Apple Inc.* 757 F.3d at 1314.  As is explained more fully below,

Civiq's arguments regarding Ms. Bennis do not provide grounds for exclusions.

> a) Ms. Bennis's Opinions on Lost Profits are Admissible

Upon proof of infringement, "the court shall award [the patent owner] damages adequate

to compensate for the infringement but in no event less than a reasonable royalty for the use

made of the invention by the infringer." 35 U.S.C. § 284 (1998).  To recover lost profits, the

patent owner must show "causation in fact," establishing that "but for" the infringement, he

would have made additional profits. *See King Instruments Corp. v. Perego*, 65 F.3d 941, 952, 36

U.S.P.Q.2D (BNA) 1129, 1137 (Fed. Cir. 1995). When basing the alleged lost profits on lost

sales, the patent owner has an initial burden to show a reasonable probability that he would have

made the asserted sales "but for" the infringement. *See id.*  Once the patent owner establishes a

reasonable probability of "but for" causation, "the burden then shifts to the accused infringer to

show that [the patent owner's "but for" causation claim] is unreasonable for some or all of the

lost sales." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

In general, the amount of damages recoverable for patent infringement is a question of

fact, upon which the patentee bears the burden of proof.  See *Bic Leisure Products, Inc. v.

Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).  As Acknowledged by Ms. Bennis,

*one method* of establishing "lost profits" as a measure of damages is through satisfaction of a

four-factor test set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th

Cir. 1978).); *see* D.I. 209, Ex. 25, Bennis Report at pp. 29 – 46. The Panduit test "requires a

showing of (1) demand for the patented product, (2) absence of acceptable noninfringing

substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the

amount of profit that would have been made."  *See id.*



(1)     Civiq Incorrectly Asserts that Ms. Bennis's Calculation of MRI's
        Lost Profits Relies Entirely on Information ███████████████
        ███████████████████████████████████████

        (a)     ████████████████████████████████████
                █████████████████████████████████

Civiq misrepresents the purpose and scope of the ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ By its own

terms, the CDA excludes certain "Proprietary Information" from non-disclosure restrictions,

including information that is responsive to a discovery request.  As expressly forth in the CDA:

> …both Parties acknowledge that there is currently pending litigation between
> them and this Agreement shall in no way be interpreted to hinder or deny either
> Party from obtaining full discovery from the other Party in the ordinary course of
> the litigation.  For purposes of clarity, if a Party's Proprietary Information
> disclosed hereunder is later deemed to be responsive to a discovery request in the
> litigation, it is not excluded from production on the basis of this Agreement, but
> the litigation party(ies) seeking discovery must obtain the production via the
> discovery process and not via the exchange of any information hereunder.

See D.I. 209, Ex. 20, CDA, at pg. 2.  Accordingly, ▮▮▮▮▮ is not a cloak of secrecy for

information that is properly discoverable.  To the extent Civiq has served discovery, and MRI

has information responsive to such discovery, the ▮▮▮▮▮▮▮▮▮▮▮▮



▮▮▮▮ *Id.,* at pg. 1 ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

       (b) ▮▮▮▮▮▮▮ MRI's Own
Information or Information Otherwise Discoverable.

As previously held by this Court, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ Nowhere in Civiq's *Dabuert* challenge of Ms.

Bennis does Civiq allege that any specific item of information used by Ms. Bennis was not

otherwise discoverable.  Civiq does not even identify specific documents that allegedly should be

excluded ████████. Instead, Civiq focuses its argument at a higher level, attempting to

obtain blanket protection against ████████████████████████████████

regardless of its nature, origin, or production in discovery.

          (c)     Ms. Bennis's Lost Profit Calculations Rely on Documents
Produced by Civiq in Discovery and MRI's Own Internal
Information.

Civiq dramatically claims that "Ms. Bennis relies *solely* on information █████████

████████████████████████ D.I. 203, Civiq Opening Brief at 20,

emphasis added.  This, however, is very far from the truth.  Ms. Bennis's lost profits calculation

used documents *produced by Civiq in discovery* to calculate an ██████████████

████ *See* D.I. 209, Ex. 25, Appendices B, C to Bennis Report, citing CIVIQ253543 –

CIVIQ0253556[9].  Ms. Bennis ██████████████████████████████

██████████████████████████████ D.I. 209, Ex. 23, Dunn

depo. tr. Pt. 2 at 431.[10]  Had Ms. Bennis ██████████████████████

███████████████████████████████████████████

███████████████████████████████████

As such, it is not only deceptive for Civiq to omit the fact that Ms. Bennis used information

produced by Civiq in this litigation as part of the lost profit calculations, but nonsensical for

Civiq to argue this point when it has been to Civiq's own benefit in terms of the damages sought.

       Defendants also ignore the fact that MRI has, and does, make products like those sold by

Civiq, and as a result, has its own actual pricing, costing, and profit data to consult.  Ms. Bennis

used MRI's own internal information and rates, along with the knowledge of MRI CFO Steve

---

[9] These documents were produced by Civiq on 11/16/18.
[10] This number was likely inquired about during the deposition because it appeared on
MRI00023575, which was introduced as a deposition exhibit.  MRI00023575 is discussed *infra*.

Stoeffler, to assist in the calculation of MRI's total cost of ██████████████████████

███████████████████████████████████████████████████████████████

D.I. 209, Ex. 25, at Schedules 3.1-3.4.  These items of Ms. Bennis's incremental cost analysis are

not based on any information ██████████████████████████ Ex. JJJJ, Stoeffler Dec.

at paras. 5-9.   As such, this information is absolutely proper for use in Ms. Bennis's incremental

cost analysis.  Furthermore, even if these items are identified on documents that also include

Civiq information, the cited information itself cannot be subject to ████████████ ████

████████ because it is MRI's own information.  This would otherwise result in ████████

███████████████████████████████████████████████████████████████

████   This again demonstrates why Civiq's claims that Ms. Bennis relied solely on ████████

█████████████████████████ is completely false.

<div style="text-align:center">(d)      MRI Provided an Exemplary Calculation of Lost Profits in<br/>July 2018 in Response to Civiq's Discovery Requests.</div>

Civiq has served several discovery requests aimed at obtaining MRI's damages and

grounds therefore.  See, e.g., Civiq RFP No. 47:  "Each and every document, thing, ESI, or

tangible item concerning any damage MRI contends it has suffered as the result of the alleged

infringement by Civiq of any claim of the Patents-in-Suit"; No. 48: "Each and every document,

thing, ESI, or tangible item concerning or relating to any profits that MRI has lost due to Civiq's

alleged infringement"[11].   Ex. KKKK, at pg. 17.  Civiq's Interrogatory No. 6 requested that MRI

"[i]dentify all damages that MRI has allegedly incurred as a result of alleged infringement of the

Patents-in-Suit by Civiq…"  See D.I. 205, Ex. 3, at pg. 2.  On July 6, 2018, MRI provided a

supplemental response to Interrog. 6, stating that ███████████████████████████

---

[11] Additional discovery requests related to damages include RFP Nos. 47, 49-69, Ex. KKKK at pg. 17-19.

█████████. For example, Attachment 2 (MRI00023575) to this response illustrates ██

███████████████████████████████████████████████████████████" *Id.*, at

pg. 4.  MRI00023575 was produced along with the supplemental response, and sets forth ██

████████████████████████████████ See Ex. LLLL, MRI00023575. ████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ As described by Ms. Bennis, "█████████████

█████████████████████████████████████████

████ D.I. 209, Ex. 25, Bennis Report, at 44.  It has been 10 months since MRI provided its

supplemental response to Civiq's Interrogatory No. 6, and Civiq has not asserted that MRI's

response to this discovery request has somehow been a violation of ████████ ████████

Civiq even introduced this discovery response and the attachment (MRI00023575) during the

October 24, 2018 deposition of Bill Dunn. *See* D.I. 209*, Ex. 23, Dunn Tr. Pt. 2 at 424-426[12].

Civiq's own damages expert, Mr. Eichmann, has also identified MRI00023575 and MRI's

Supplemental Objections and Responses to Defendant's First Set of Interrogatories to Plaintiff in

his list of "Documents Received and/or Relied Upon."  D.I. 224, Ex. JJJ, Eichmann Report, at

pg. 128.  Aside from the fact that this information was properly produced in response to Civiq's

own discovery, Civiq has waived any right to object to the disclosure when it has been silent on

the issue for so long.

---

[12] MRI00023575 was introduced by Civiq as Exhibit 38; MRI's Supplemental Responses to
Interrogatories 6, 7 was introduced by Civiq as Exhibit 20.  *Id.*

(e)     Not Only ███████████████████ Been Produced by
Civiq in Discovery, but MRI Reviewed ████████████████████
████████████████████

████████████████████ used by Ms. Bennis was disclosed in response to

Civiq's Interrogatory No. 6.  As discussed *supra*, MRI produced an exemplary lost profits

analysis calculation in July 2018 in response to Civiq's discovery request, which included the

same cost of additional ████████████████████ See D.I. 205, Ex.

3, at pg. 4 (identifying MRI00023575); Ex. LLLL, MRI00023575. ████████████

████████████ set forth in MRI00324242, was created and produced in response to Civiq's

discovery, namely, Civiq Interrog. No. 6. *See* D.I. 205, Ex. 3 at pg. 2; Ex. QQQQ; Stoeffler Dec.

at para. 10; Ex. GGGG, Dunn Dec., para. 53. ████████████████████

████████████████████████████

████████████████████████████. Ex.

GGGG, Dunn Dec. at paras. 47-48.  Not only is the information in MRI00324242 responsive to

Civiq's discovery request, but Civiq has also produced ████████████████████

████████████████████████████

██████████ ████████████ ████████████

████████████████████████████

██████████ ████████████ ██████████ ████████████

██████████ ████████████████████

██████████

Even if, *arguendo*, MRI were somehow precluded from introducing a document at trial

due to ████████████████ ██████████ it would not impact Ms. Bennis's ability to set

forth her lost profits analysis as she would still be entitled to rely on testimony from MRI.  As

Ms. Bennis has identified in her report, discussions with Steve Stoeffler were the basis for many aspects of the lost profit analysis, including the calculations of incremental costs. Mr. Stoeffler will be able to testify as to these facts, including MRI internal information. Whether the information Mr. Stoeffler provides is also supported by documentation will go to the *weight* of the evidence, not its admissibility. *See Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("When there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.") Ms. Bennis has not relied on any facts or data which render her opinion on lost profits inadmissible.

> (2)     Ms. Bennis's Opinions on Lost Profits Should Not be Excluded over Civiq's incorrect assertions that MRI has failed to establish "but for" causation or Demand for the Patented Products

Civiq is also incorrect in arguing that Ms. Bennis should not be permitted to opine on lost profits due to a failure to establish "but for" causation and demand for the patented product. First, Civiq is essentially and incorrectly arguing that the *Panduit* factors are the only manner of establishing a right to lost profits. *Rite-Hite Corp.*, 56 F.3d at 1548. In this case, evidence of but for causation exists irrespective of *Panduit*. MRI, was founded by Mr. William ("Bill") Dunn in 2004, as a designer and manufacturer of indoor and outdoor digital displays; *see* D.I. 209, Ex. 25, Bennis Report at pgs. 6 – 11. MRI has since developed proprietary and patented thermal management technology that has made outdoor digital displays, and more specifically the smart city kiosks that are the subject of the present dispute, possible. *Id.* MRI's proprietary thermal management technology is and has been revered and renowned in the industry. *Id.*

It is not surprising that after a ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



. *See id.*

. *Id.*

. *Id.*

D.I. 209, Ex. 25, Bennis Report at pgs. 10-11, 38.

*See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F. 3d 1336, 1353 (Fed. Cir. 2001).

          (a)     It is Reasonable to conclude that MRI would have sold the Entire Outdoor Kiosk

Defendants argue that Ms. Bennis's lost profits opinion should be excluded because she assumes that "but for" Civiq's infringement, MRI would have sold the entire Link kiosk to Civiq for purposes of fulfilling its obligations to CityBridge, as opposed to a panel display module. While Defendants would like to argue that "anything is possible," the question for the jury is what was most probable. The evidence in this case suggests that but for Civiq's infringement, it is reasonable to believe that MRI would have provided the entire kiosk to Civiq.

20

████████. MRI at the time of Civiq's infringement would have provided *the entire kiosk* to Civiq. Dunn Declaration, Ex. GGGG, para. 26. The recreation of the "but for" world is necessary in a lost profit calculation. This recreation requires the sale by MRI of the entire kiosk.

Civiq overstates the holding of this Court in *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, C.A. No. 15-152, 2018 WL 4691047, at *6 (D. Del. Sep. 28, 2018). In that case, this Court did not exclude an expert's lost profit opinion. Rather, this Court limited testimony that was based solely on qualitative evidence which the jury was going to hear. In this case, the jury will hear ████████████████████████████████████████████ and infringe MRI's patents. MRI had the ability to supply an entire kiosk and has done so for numerous customers worldwide. Dunn Declaration, Ex. GGGG, paras. 19-20.



Civiq also attempts to advance the argument that ███████████████████████ ██████████████████████████████████████ ███████ However, Defendants misapply the case law to which they cite, given ██████████ ████████████████████████████. Here, ████████████ ████████████████████████████████. As Ms. Bennis points out, ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████ D.I. 210, Ex. 27, depo. tr. Melissa A. Bennis, pg. 187.

Civiq also asserts that it is not reasonable that Civiq would receive no profits from the sale of products if MRI were the supplier. The issue here is what damages were sustained by MRI. It has long been held that in the context of reasonable royalty, a royalty amount can

exceed the Defendant's profits. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989).  The fact that damages are of the nature of lost profits as opposed to a royalty does not change the outcome.

Finally, Civiq's citation of *Immersion Corp. v. HTC Corp.*, C.A. No. 12-259, 2015 WL 834209, at *4 (D. Del. Feb. 24, 2015) does not support the contention they seek; i.e. that lost profits on the sale of an entire unit is not legally attainable.  This Court's decision in *Immersion* to exclude lost profits was based upon the fact that the plaintiff in that case based lost profits not on lost sales of patented products but rather, lost sales of non-patented software that was related but also independent of the patented product.    Ms. Bennis's opinion relating to the entire kiosk should not be stricken.

> (b)    Ms. Bennis's Opinions Relating Demand for the
> Patented Product are Reliable and Admissible

Ms. Bennis's discussion of demand for the patented products is found in her report at pages 29 to 34.  D.I. 209, Ex. 25, Bennis Report.

MRI offers a multitude of outdoor display products under the trademark BoldVu®.  Dunn Declaration, Ex. GGGG, para. 10.  These displays are designed to operate under extreme thermal conditions and have been thoroughly tested.  Dunn Declaration, Ex. GGGG, para. 29.  BoldVu® products have been installed worldwide.  Dunn Declaration, Ex. GGGG, para. 19-20.

Civiq's criticisms of Ms. Bennis's analysis of demand misinterprets the law and are an apparent misunderstanding regarding the accused and patented products at issue.  Specifically, all of the asserted patents relate to thermal management for outdoor displays.   MRI's patented BoldVu® products are embodiments of the patents in suit.  Dunn Declaration, Ex. GGGG, para 40.  An outdoor display will fail without proper thermal management.   MRI's success in the marketplace, a fact not challenged by Civiq, is directly related to the fact that MRI's products

22

work in the desired outdoor environment because of the patented technology.  Dunn Declaration, Ex. GGGG, para. 32.

First, Civiq suggests that "generalized demand for 'digital signage' products at large and MRI's total top-line sales for all of its products, regardless of what industry these are sold into where they embody the patented technology, cannot show *Panduit* demand for the *patented product*."(D.I.203, Defendants' Opening Brief, pg. 26.)  This is inconsistent with case law that notes that the first Panduit factor "simply asks whether demand existed for the patented product, i.e., a product that is covered by the patent in suit or that directly competes with the infringing device." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1330 (Fed. Cir. 2009).   "[T]he focus on particular features corresponding to individual claim limitations is unnecessary when considering whether demand exists for a patented product." *Id.* Ms. Bennis presents ample evidence to support demand for MRI's digital displays, which is highlighted throughout her report and corroborated by Dr. Silzars.

Civiq also claims that "evidence regarding demand for the Link kiosk cannot stand in for demand for the patented products where there is no evidence that the Link kiosk is 'similar in price and product characteristics' to the patented products." D.I.203, Defendants' Opening Brief, pg. 27.) This suggestion is contrary to the evidence produced in this case and contrary to the claims made by Civiq's own experts.  Mr. Sharp and Mr. Eichmann both highlight the MRI "BoldVu BV72P-THH-FSD-SF8" as an acceptable, available, non-infringing alternative. Exhibit NNNN, Expert Report of Anthony Sharp Regarding Noninfringing Alternatives, dated February 19, 2019, pgs. 22-25; D.I. 224, Ex. JJJ, Expert Report of Richard Eichmann, dated February 19, 2019, pg. 22.  Mr. Sharp and Mr. Eichmann are misinformed, as this product does include the patented technology, but nonetheless, their opinion that a BoldVu product would be

23

an acceptable and available alternative contradicts Civiq's assertion that there is no evidence that

the ██████████████████████████████████████. D.I. 210, Ex. 31, Silzars

Non-Infringing Alternatives Report at paras. 13.

Civiq's citation to *Calico Brand, Inc. v. Ameritek Imps., Inc.*, 527 F. App'x 987, 996 (Fed.

Cir. 2013) is not helpful.   In that case, the Court found demand was not present because the

patentee failed to argue or present evidence that demand for the patented feature overcame other

evidence that consumers of the products at issue in that case based buying decisions on anything

other than price.   Here, the patented features of the MRI patented products are the features that

permit those products to function.   Moreover, Civiq has presented no evidence that any

consumer of an outdoor display makes its decision solely or mainly on the basis of price.

Overall, it is nonsensical for Defendants to suggest that the products sold by MRI, or able

to be custom created by MRI to meet customer specifications, and that embody the patented

technology, are not interchangeable with the Civiq accused products.  As discussed above, the

defendants ██████████████████████████████████████████

██████████████████████████████████████████████████

Ms. Bennis's opinions and analysis with respect to this issue under *Panduit* factor 1 is

appropriate and reliable.

        b)     Ms. Bennis's Opinions Regarding a Reasonable Royalty Rate are also
Admissible

A reasonable royalty is the minimum measure of damage that a patent owner is entitled to

if infringement is proven.  35 U.S. Code § 284.  In addition to finding that MRI is entitled to

certain lost profits, Ms. Bennis has opined on the reasonable royalty rate and the proper royalty

base that should be adopted in this case.  D.I. 209, Ex. 25, Bennis Report at pgs. 46 – 80.  Civiq

24

is incorrect in its assertion that this aspect of Ms. Bennis's opinions should be excluded from trial.

>            (1)    Ms. Bennis's Opinion on a Reasonably Royalty was
>                   developed using Accepted Principles and Methods and is
>                   Properly Tied to the Facts of this Case and is Admissible

Ms. Bennis has formed an opinion regarding the reasonable royalty that MRI and Civiq would have agreed to in a hypothetical negotiation by analyzing the facts of this case and the factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1125 (S.D.N.Y. 1970) (the "*Georgia-Pacific* Factors"); *see* D.I. 209, Ex. 25, Bennis Report at pp. 46 – 80,; *see also* D.I. 209, Ex. 26, Bennis Reply Report at pgs. 12 – 24.  The Federal Circuit has sanctioned the use of the *Georgia-Pacific* Factors as a reliable method of opining on reasonable royalty damages.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *E.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010). More specifically, the "[*Georgia-Pacific*] factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue."  *Uniloc USA, Inc.*, 632 F.3d at 1317.

As can be seen by reviewing the opinion of Ms. Bennis, her ultimate opinion that MRI and Civiq would have agreed to a royalty rate of ▮▮ considered, among other things, a comparable license agreement that MRI had previously entered ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Under the comparable license, a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ *See* Exhibit OOOO ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See also* D.I. 209, Ex. 25, Bennis Report at pp. 60 – 61.  There is no dispute that this comparable license is highly relevant to the hypothetical negotiation in this case: the report of Civiq's own expert witness on damages acknowledges and agrees with Ms. Bennis on this point.  *See* D.I. 224, Ex.

JJJ, Expert Report of Richard Eichmann at para. 80; *see also Laser Dynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).  In forming her opinion, Ms. Bennis also considered the importance of the technology at issue in this case and the competitive relationship between MRI and Civiq.  *See* D.I. 209, Ex. 25, Bennis Report at pgs. 46 – 80.  Ms. Bennis evaluated the *Georgia-Pacific* factors and considered them in forming her opinion.  *Id.*  More specifically, Ms. Bennis considered these factors, identified those that were most important, and then explained how and why certain considerations would impact the reasonable royalty rate in this case in relation to the █ royalty rate of the comparable license.  *Id.* This methodology is proper.  *See Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.*, No. 16-187-LPS, 2018 U.S. Dist. LEXIS 85476, at *7-9 (D.Del. May 22, 2018); *see also MicroStrategy Inc. v. Bus. Objects, S.A.,* 429 F.3d 1344, 1355-56 (Fed. Cir. 2005).

In its attempt to exclude Ms. Bennis's opinion, Civiq incorrectly argues that Ms. Bennis's opinion is untethered to her analysis under the *Georgia-Pacific* factors and tries to convince the Court that it should be deemed faulty and unreliable as was the opinion at issue in *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 – 51 (Fed. Cir. 2018).  But that case is easily distinguished.  In *Exmark*, there was no suggestion that the opinion at issue in that case considered a "highly probative" comparable licensing agreement to the patented technology and then used relevant *Georgia-Pacific* factors to adjust the rate appropriately as Ms. Bennis has done here.  *Id.*  It simply cannot be said that Ms. Bennis's analysis has failed to tie the evidence or the *Georgia-Pacific* factors to her proposed royalty rate in this case.

Moreover, there is not, nor has there ever been a requirement to provide commensurable arithmetic terms for the numerous considerations that go into a reasonable royalty analysis.  *See*

*Georgia-Pacific Corp.*, 318 F. Supp. at 1125; *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). To the extent Civiq argues that Ms. Bennis arbitrarily ██████████ of the royalty rate of the comparable license to the relevant technology and arbitrarily ██████████ rate, the argument is without merit and does not suggest that Ms. Bennis's opinion should be excluded. "Establishing a reasonable royalty is not an exact science." *Apple, Inc.*, 757 F.3d 1286, 1313 – 26 (Fed. Cir. 2014). "Many of the *Georgia-Pacific* factors are qualitative, not quantitative and therefore, experts may supplement quantitative evidence with the expert's own experience and judgment." *Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.*, No. 16-187-LPS, 2018 U.S. Dist. LEXIS 85476, at *12-14 (D.Del. May 22, 2018). In this case, Ms. Bennis looked at the ██ royalty rate of the comparable license and performed a *Georgia-Pacific* analysis recognizing (and explaining) that facts exist which require the rate to be adjusted for the reasonable royalty in this case.

For example, Ms. Bennis had discussions with Mr. William Dunn, the owner of MRI and the named inventor of the asserted patents, and cited those discussions in assessing the importance of the thermal management technology to the royalty rate of the comparable license. *See* D.I. 209, Ex. 25, Bennis Report at pg. 76 and at notes 384 – 385; *See also* D.I. 210, Ex. 27, Melissa Bennis depo. tr. at 18:20 – 25:24, 26:07 – 29:20, 57:05 – 24, 182:16 – 194:12, 212:18 – 215:13, 224:17 – 229:22. She explained her understanding, again citing to discussions with Mr. Dunn, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ *See* D.I. 209, Ex. 25, Bennis Report at pg. 76. Ms. Bennis ultimately concluded that ██ of the royalty rate of the comparable license should be

██████████████████████████████████████████████.  Civiq may argue that this does

not amount to mathematical precision, but that is not required.  *See WhitServe, LLC v. Computer*

*Packages Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012); *see also Ga-Pacific Corp.*, 318 F. Supp. at

1125.  Ms. Bennis goes on to explain why the rate would be ███████████████████████

████████████████████████████████████████  *See* D.I. 209, Ex. 25, Bennis

Report at pgs. 46 – 78.   The unfounded argument Civiq is trying to make here is similar to that

which was rejected by the Court in *Plastic Omnium* where the Defendant also tried to fault the

testimony of the Plaintiff's damages expert with accusations that the expert "arbitrarily doubled"

the royalty rate of the comparable license and "seemingly picked [the reasonable royalty rate] out

of thin air."  *Plastic Omnium*, 2018 U.S. Dist. LEXIS 85476 at *7 – 9, 12 – 14.  Ms. Bennis has

performed a proper analysis that is sufficiently tied to the facts of this case.  *See MiiCS &*

*Partners, Inc. v. Funai Elec. Co.*, No. 14-804-RGA, 2017 U.S. Dist. LEXIS 201511, *6 (D. Del.

Dec. 7, 2017)(damages expert appropriately relied upon conversations with technical expert in

attributing value to the patented technology and any criticism of opinion was a factual issue

better suited for cross-examination).    That Civiq disagrees with Ms. Bennis's conclusions is no

grounds for excluding her opinions from trial.  *See Apple Inc.*, 757 F.3d at 1314 – 15; *See also*

*Ericsson, Inc*, 773 F.3d at 1227.

<div style="padding-left:3em">

(2)    Ms. Bennis's Application of the Reasonable Royalty Rate to the Sale Price of Civiq's Smart Kiosk Product is Supported by the Evidence of this Case and does not Render her Opinion Inadmissible

</div>

Nor does the royalty base utilized by Ms. Bennis provide grounds for excluding her

testimony.  According to Civiq, Ms. Bennis's reasonable royalty analysis should be excluded

from trial because she has included the entire value of the accused kiosks in the royalty base

without satisfying the entire market value rule.  *See* D.I. 203 at pg. 31.  Civiq misapplies the law.

A reasonable royalty award should be based on the value that the patented invention adds to the end product.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).  But, this "apportionment can be addressed in a variety of ways including by… adjustment of the royalty rate so as to discount the value of a product's non-patented features."  *See id*; *see also Exmark Mfg. Co.*, 878 F.3d at 1348.  In fact, the Federal Circuit has found that using the entire market value of the accused products as the royalty base is particularly appropriate in certain cases.  *Exmark Mfg. Co.*, 878 F.3d at 1348.  "Sophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sale price."  *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).

Ms. Bennis has taken care to evaluate the facts of this case and the *Georgia-Pacific* factors to opine on reasonable royalty damages in a manner that properly apportions the value of the patented invention.  Performing this analysis, Ms. Bennis considered a variety of evidence – including conversations with and the testimony of Mr. Dunn and MRI's technical expert Aris Silzars – regarding the importance of the patented technology to the accused products and the marketplace.  As explained by Ms. Bennis, the evidence shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* D.I. 209, Ex. 25, Bennis Report at pp.  52 – 53. Moreover, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮*See* D.I. 209, Ex. 25, Bennis Report at pgs. 60-61; *See also* D.I. 209, Ex. 26, Bennis Reply Report at pp. 19 – 21; *See also* Exhibit OOOO ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ at paras. 1.3 and 3.1. Civiq's argument that Ms. Bennis's opinion lacks reliability

because she did not further adjust the rate of the comparable license so that it could be applied to something *less* than the total value of the licensed products makes little sense.

Ms. Bennis's opinion properly apportions damages for the patented inventions and thus are not in violation of the entire market value rule. *See Exmark Mfg. Co.*, 878 F.3d at 1348. Despite Civiq's critique of Ms. Bennis, its own expert on damages concedes ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ *See* D.I. 224, Exhibit III, Richard Eichmann depo. tr. at 59:21 – 61:15. Any criticism that Civiq has of Ms. Bennis's opinion should be presented on cross examination or through its presentation of its own expert, and not through the exclusion of Ms. Bennis. *See Exmark Mfg. Co.*, 878 F.3d at 1348.

The prohibitions under the "entire market value rule" are often invoked "where <u>small elements</u> of multi-component products are accused of infringement." *See Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279 (N.D.N.Y. 2009). In some cases, the entire market value rule prevents patentees from seeking reasonable royalties based on the entire market value of the accused product. But, the rule is simply an offshoot of the requirement that the patentee give reliable evidence tending to apportion the defendant's profits and the patentee's damages and the unpatented features. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 – 67 (Fed. Cir. 2012). This is not a case that presents the types of concerns the prohibitions under the entire market value rule were designed to protect. More specifically, the asserted patents are not directed to a "small element" of the accused devices (such as a particular technology for an optical disc drive of a laptop computer as in *LaserDynamics*), but are instead directed to technology that is fundamental and critical to the operation and value of the accused devices.

*See* Exhibits A – E and KKK; *see also* Ex. GGGG.  The evidence tends to suggest that the accused devices are only possible because of and are reliant upon the inventions claimed by the asserted patents: in other words, the asserted inventions imbue the combination of elements contained in the accused products with value.  *See id.*; *Ericsson, Inc.*, 773 F.3d at 1226.  Civiq's repeated reference to evidence which *may* tend to show that consumers appreciate various features of the accused products does *not* indicate Ms. Bennis's opinion regarding a reasonable royalty rate is unreliable.

Civiq's assertion that the royalty base adopted by Ms. Bennis must be justified by showing that the patented feature(s) alone cause customers to purchase the accused products is incorrect as a matter of law.  *See id; see also Exmark Mfg. Co.*, 878 F.3d at 1348.  But, even if Civiq were correct on this point, MRI has evidence which tends to show that the patented features drive the value and demand for the whole products.  *See* D.I. 209, Ex. 25, Bennis Report at pgs. 52 – 53; *See* Exhibits A – E and KKK; Ex. GGGG.  Ms. Bennis's opinion on reasonable royalty damages, in which she applies her adopted royalty rate to the entire market value of the accused products provides a measure of damages that is based on the value that the patented invention adds to the end product.  Her opinion should not be excluded from trial.

2. NONE OF MRI'S EXPERTS' OPINIONS REGARDING NON-INFRINGING ALTERNATIVES SHOULD BE EXCLUDED

Civiq asserts that Dr. Silzars and Ms. Bennis's opinions relating to acceptable non-infringing alternatives should be stricken because they allegedly rely on unsubstantiated evidence or unsubstantiated belief.    In addition, Civiq asserts that Dr. Silzars and Ms. Bennis's opinion are flawed because they allegedly applied the wrong legal standard. "[W]hether acceptable non-infringing alternatives exist, which may reduce or preclude a lost-

31

profits damages award, presents a question of fact." *In re Biogen '755 Patent Litig.,* 2017 U.S. Dist. LEXIS 221500, at *8-9 (D.N.J. Dec. 22, 2017).

Ms. Bennis's opinions relating to acceptable non-infringing alternatives can be found in her report from D.I. 209, Ex. 25, pgs. 35-41.   She points out the benefits of the patented products that MRI supplies. She also references much more than just the CEO of MRI, Mr. Dunn.  For example, Mr. Bennis references the deposition of Michael Naclerio, ███████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████." D.I. 209, Ex. 25, Bennis Report at p. 37.

Ms. Bennis relies upon other testimony and evidence including testimony from Mr. D'Amelio discussing ████████████████████████████████

████████████ D.I. 209, Ex. 25, Bennis Report at pg. 37.   In addition, she references a

████████████████████████████████████████████

████████████ D.I. 209, Ex. 25, Bennis Report at pg. 37.

Ms. Bennis also relies on Mr. Dunn's experienced belief that no competitor to MRI produces acceptable non-infringing alternatives:

████████████████████████████████████
██████████████████████████
██████████████ D.I. 209, Ex. 25, Bennis Report at pg. 39) (references omitted).

Ms. Bennis's opinions are not based upon personal belief nor speculation.  They are based upon facts in the record.   While Ms. Bennis also relied in part on discussions with MRI's CEO Mr. Dunn, reliance on those discussions is not improper.  *See*, *e.g.*, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, No. 06-11109, 2008 WL 364401, at *4 (D. Mass. Feb. 8, 2008) ("the rules do allow an expert to rely on information provided by others, so the fact that [s]he has 'done no investigation' personally is insufficient to preclude h[er] testimony"). See also *Apple, Inc.,* 757 F.3d at 1321.

Civiq misstates the law relating to acceptable non-infringing alternatives.  As the Supreme Court recognized, a reconstruction of the hypothetical "but for" market takes into account any alternatives available to the infringer. *See Aro Mfg. Co., Inc. v. Convertible Top Co*., 377 U.S. 476, 507 (1964).  Civiq seems to be relying on dicta from *Grain Processing Corp. v. Am. Maize-Prod. Co.,* 185 F.3d 1341, 1351 (Fed. Cir. 1999) wherein the Court stated, "[A]n available technology not on the market during the infringement can constitute a noninfringing alternative."  However, while that may be true under facts similar to those in that case, that singular statement is not the singular holding of *Grain Processing*.  Rather, the decision stands for the proposition that whether products are on the market or not is most certainly germane to the assessment of availability:

> When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time.  The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period.  Mere speculation or conclusory assertions will not suffice to overcome the inference. After all, the infringer chose to produce the infringing, rather than noninfringing, product. Thus, the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement. *Id.*

33

The relevant inquiry here in the "but for" analysis, is what would Civiq have done if it was not going to sell its Link Products to CityBridge for the New York City "Smart City" contract.

According to Civiq's experts, Mr. Eichmann and Mr. Sharp, ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████. Civiq, has no evidence that it considered any of these products to satisfy the CityBridge contract.   The evidence in the record belies any assertion that these products were acceptable or otherwise non-infringing.



| Alleged Non-Infringing Alternative | |
| --- | --- |
| ██████████████ | |
| Civiq Waypoint | |
| Civiq QSR/Pronto | |
| Civiq (Vertigo) Totem | |
| Hyundai IT 55" Double-Faced LCD product | |
| BoldVu BV72P-THHFSD-SF8/part number K7200-000-CG-004-xx | |

Dr. Silzars in responding to Mr. Sharp, discusses each of the alleged non-infringing alternatives and determines them to be either not available not acceptable.  D.I. 210, Ex. 31, Dr. Silzars' Non-Infringing Alternatives Report.  In his report, he references record evidence that certain of the alleged non-infringing alternatives were not capable nor ready to operate in

outdoor environments.  For example with reference to the Totem, Dr. Silzars noted: 

(CIVIQ0013569-CIVIQ0013577)

CIVIQ0013574.    D.I. 210, Ex. 31, Dr. Silzars' Non-Infringing

Alternatives Report at para. 16.  In paragraphs 18 – 22 of his report, Dr. Silzars notes

D.I. 210, Ex. 31, Dr. Silzars Non-Infringing Alternatives Report at paras.

18-22.    Similarly, Dr. Silzars discusses the fact that Civiq indicated in

.I. 210,

Ex. 31, Dr. Silzars' Non-Infringing Alternatives Report at para. 28.

As discussed above and referenced in Dr. Silzars's Non-Infringing Alternatives Report,

MRI's BoldVu BV72P-THHFSD-SF8/part number K7200-000-CG-004-xx is a patented

product.  D.I. 210, Ex. 31, Dr. Silzars' Non-Infringing Alternatives Report at para. 13.   Notably,

Civiq does not explain that if this was truly an acceptable alternative, how MRI would not have

received compensation and profit for this product.

Ms. Bennis also responds to Mr. Sharp in her reply report. D.I. 209, Ex. 26 Bennis Reply

Report at pgs. 5-9.   Her reply, like Dr. Silzars' Non-Infringing Alternatives Report is based upon

facts and evidence in the record, not speculation or personal belief.

Civiq also moves to strike Dr. Silzars' opinion relating to the Hyundai product.  This

product was identified by Mr. Sharp as an allegedly non-infringing alternative.   Ex. NNNN Mr.

Sharp Report on Non-Infringing Alternatives at para. 44.

35

Ms. Bennis addresses the Hyundai product in her report and Hyundai's prior relationship with MRI. *See* excerpts below:



D.I. 209, Ex. 26 Reply Report of Melissa Bennis pgs. 6-7. (References omitted).  *See also* Dunn Declaration, Ex. GGGG paras. 54-63.

Dr. Silzars upon review of drawings relating to the Hyundai product, concluded that like the patented products and the accused devices, the Hyundai product utilizes two cooling paths. His opinion states that he disagrees with Mr. Sharp who did no analysis as to whether the Hyundai product infringes.  Dr. Silzars should be permitted to render his opinions relating to the Hyundai drawings especially if Mr. Sharp is permitted to render an opinion that the Hyundai product does not infringe based upon no review of the drawings.

Civiq has asserted that certain allegedly non-infringing designs can perform as well as the patented products by using ambient air with filters.  Civiq takes issue with Dr. Silzars's

statement that ██████████████████████████████████████████████

██████████████████████████████████████.” D.I. 210, Ex. 31, Dr. Silzars' Non-

Infringing Alternative Report at para. 25.   That statement was made in part to respond to a

representation by Civiq's expert Mr. Sharp that the ████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████   Ex. NNNN Sharp Report on Non-Infringing Alternatives at para. 53.  The expertise

of Dr. Silzars has not been questioned.  Moreover, if such a solution was readily available and

acceptable, it would seem Civiq would have chosen that approach.  The reality is that Civiq's

own documents relating to ████████████████████████████████████████████████

█████████████████████████████████████████ D.I. 210, Ex. 31, Dr. Silzars'

Non-Infringing Alternative Report at paras. 18-21.   Dr. Silzars's opinion relating to ambient air

and filters is not speculative but rather based upon years of experience and evidence in the

record.

　　　　Fundamentally as it relates to non-infringing alternatives, Civiq misapplies *Grain

Processing*.   The fundamental assumption for requiring a review of acceptable non-infringing

alternatives is "[w]ithout the infringing product, a rational would-be infringer is likely to offer an

acceptable noninfringing alternative, if available, to compete with the patent owner rather than

leave the market altogether.  *Grain Processing,* 185 F.3d at 1351.

　　　　Civiq should not be able to avail itself to the concept that it is a "rational would-be

infringer."  Civiq made a choice with its Link design: buy MRI as a company, buy MRI products

to satisfy the City Bridge contract, or build an infringing product.  Unlike Civiq's alleged

acceptable alternatives which are speculative at best, Civiq's decision to make an infringing

product rather than buy MRI's products is not speculative.   Civiq's citation to *EMC Corp. v.*

*Pure Storage, Inc.*, 154 F. Supp. 3d 81, 117 (D. Del. 2016) does not support their contention.

That decision stands only for the proposition that the burden of proving availability for products

not on the market belongs to the accused and that the issue is a factual one which a jury must

decide.  Dr. Silzars and Ms. Bennis point to appropriate evidence that Civiq's alleged non-

infringing alternatives were 1) not available 2) not otherwise acceptable, 3) not infringing, and 4)

never considered by Civiq during the time it decided to infringe MRI's patents.  Dr. Silzars's and

Ms. Bennis's opinions relating to non-infringing alternatives are proper and meet all the criteria

of the *Daubert* standard.

### 3.      DR. SILZARS'S OPINIONS REGARDING SECONDARY CONSIDERATIONS SHOULD NOT BE EXCLUDED

#### a)      It is proper for an expert to rely on facts provided by others, especially when the facts will be admissible at trial (Rule 703)

First, Civiq's allegation that Dr. Silzars does not cite to a single piece of record

evidence is false.  In his submitted expert reports, he relies on deposition transcript testimony

(e.g., Ken Gray), statements from parties and produced party documents (e.g., as cited in MRI's

response to Civiq Interrogatory 18) which will be admissible at trial.[13]  Civiq has failed to

provide any allegations, reasons, or support for why this evidence would not be admissible at

trial.  D.I. 220, Ex. W to MRI Summary Judgment Motion, Rebuttal Validity Report of Aris

Silzars, paras. 655-661 (citing to D.I. 221, Ex. SS).

Furthermore, it is proper for an expert to rely on certain facts provided by MRI

employees, other experts and evidence presented in an interrogatory response, especially when

these facts will be admissible at trial.  F.R.E. 703.  The notes from Rule 703 even state that facts

---

[13] For example, see evidence of copying outlined in MRI's opening summary judgment brief that will be admissible at trial.   D.I. 212, SOF paras. 45-49.

upon which expert opinions may be based may be derived from three sources (firsthand observation, trial presentation, and data obtained outside of court other than by his own perception, including statements by others).   It is necessary for Dr. Silzars to obtain many facts surrounding objective evidence of secondary considerations from others, from documents produced in the case or from interrogatory responses as Dr. Silzars was not present at MRI when many of these facts relating to secondary considerations was occurring (e.g., commercial success and copying).   Contrary to Civiq's conclusory allegations, Dr. Silzars reviewed the facts presented and provided his own analysis on how the secondary considerations of nonobviousness support the validity of the patents-at-issue.  D.I. 221. Ex. W, para. 655-661.

> b)   A nexus is presumed when the objective evidence of secondary considerations is tied to a specific product(s) embodying the claimed invention

The Court affords substantial weight to secondary considerations if there is a nexus between the merits of the claimed invention and the secondary considerations.   This nexus is presumed where "the asserted objective evidence is tied to a specific product and that product is the invention disclosed and claimed in the patent." *Bayer Intellectual Prop. GmbH v. Aurobindo Pharma Ltd.*, No. 15-902, 2018 U.S. Dist. LEXIS 116931, at *38 (D. Del. July 13, 2018) (citing to *Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

In the present case, the nexus is presumed because the asserted objective evidence of secondary considerations is tied to a specific product (the MRI BoldVu displays, including the Urban Panel), and the BoldVu displays embody the inventions claimed in the patents-in-suit. D.I. 221, Ex. SS (stating that nearly every MRI BoldVu display around the 2009 timeframe and after contained the patented features of these MRI Patents-in-suit and tying the objective

evidence of secondary considerations to the BoldVu displays); D.I. 220, Ex. W, paras. 655-661; Ex. GGGG, paras. 18-19 (Dunn stating ███████████████████████████ ████████████████████████████████████████████ ████████████████; D.I. 221, Ex. SS, pg. 17.  Because the nexus is presumed in this case, Civiq's *Daubert* motion requesting exclusion of Dr. Silzars' opinions with respect to secondary considerations should be denied.

> c)    Dr. Silzars has provided a nexus between the evidence of
> secondary considerations and the merits of the claimed invention

Furthermore, Dr. Silzars has demonstrated a nexus between the evidence of secondary considerations and the merits of the claimed invention (*i.e.*, merits of the BoldVu displays sold by MRI).  D.I. 220, Ex. W, paras. 655-661; D.I. 221, Ex. SS to MRI Summary Judgment motion (answer to Civiq interrogatory 18).  For example, the evidence demonstrates that the reliability and long-life due to the patented cooling systems of the MRI BoldVu displays has solved the long-felt problems in the art, led to copying by Civiq, resulted in the commercial success of the patented BoldVu products, and has garnered industry praise.  D.I. 221, Ex. SS.   Because the evidence demonstrates a nexus between the evidence of secondary considerations and the merits of the claimed invention, Civiq's *Daubert* motion requesting exclusion of Dr. Silzars' opinions expressed in his report with respect to secondary considerations should be denied.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Civiq's motions for summary judgment and Daubert motions.

Respectfully submitted,

Dated:  May 6, 2019                             */s/ Ryan P. Newell*
                                                Arthur G. Connolly, III (#2667)
**Of Counsel:**                                 Ryan P. Newell (#4744)

40

Jeffrey S. Standley (Ohio Bar #0047248)
James Lee Kwak (Ohio Bar #0066485)
F. Michael Speed, Jr.  (Ohio Bar #0067541)
**STANDLEY LAW GROUP LLP**
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Facsimile: (614) 792-5536
jstandley@standleyllp.com
jkwak@standleyllp.com
mspeed@standleyllp.com

Kyle Evans Gay (#5752)
**CONNOLLY GALLAGHER LLP**
1201 North Market St., 20th Floor
Wilmington, DE  19801
Telephone:  (302)757-7300
Facsimile:  (302)757-7299
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
kgray@connollygallagher.com

*Attorneys for Plaintiff*
*Manufacturing Resources International, Inc.*

41