IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MANUFACTURING RESOURCES INTERNATIONAL, INC., | ) ) ) | Redacted: |
| Plaintiff, | ) ) | Public Version |
| v. | ) ) ) | C.A. No. 17-269-RGA |
| CIVIQ SMARTSCAPES, LLC, CIVIQ HOLDINGS, LLC, COMARK, LLC, and COMARK HOLDINGS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT AND TO EXCLUDE CERTAIN EXPERT TESITMONY**

OF COUNSEL:
Douglas J. Kline
Srikanth K. Reddy
Molly R. Grammel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1209

Naomi L. Birbach
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 459-7374

Yuval H. Marcus
Cameron S. Reuber
Matthew L. Kaufman
Lori L. Cooper
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, NY 10601
(914) 288-0022

Dated: March 13, 2019

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com
*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

ARGUMENT ............................................................................................................................. 1

I.   Summary Judgment Should Be Granted that Asserted Claim 7 of the '322 Patent Is
     Not Infringed........................................................................................................................ 1

II.  Summary Judgment Should Be Granted that Asserted Claims 1 and 2 of the '325
     Patent Are Not Infringed..................................................................................................... 3

III. Summary Judgment Should Be Granted that Claims 1 and 2 of the '287 Patent Are
     Invalid for Lack of Written description ............................................................................... 4

IV.  Summary Judgment of No Pre-Notice Damages Should Be Granted Because MRI's
     Virtual Marking Websites Do Not Associate The Patented Articles with Any Patent
     Numbers .............................................................................................................................. 6

     A.   MRI Has Not Contested Any Material Fact Regarding Its Virtual Marking
          Websites, Which Do Not Satisfy the Statutory Marking Requirements................. 6

     B.   MRI's New Declaration Regarding Which of Its Products Practice the
          Asserted Patents Should Be Disregarded............................................................... 8

V.   Daubert Argument 1:  Ms. Bennis's damages Opinions Should Be Excluded................. 10

     A.   Ms. Bennis's Lost Profits Opinion Is Inadmissible Because MRI Concedes
          that ███████████ Is "a Necessary Component of" Her Opinion.................. 10

     B.   Ms. Bennis's Lost Profits Opinion Is Inadmissible Because She Did Not
          Rely Upon Adequate Support to Show Demand for the Patented Product........... 12

     C.   Ms. Bennis's Lost Profits Opinion Is Inadmissible Because the Opinion that
          MRI's Lost Profits Would Have Included Products with No Functional
          Relationship to the Patented Invention Is Legal Error......................................... 13

     D.   Ms. Bennis's Lost Profits Opinion Is Inadmissible Because MRI Concedes
          that Her Opinion Regarding the Amount of Profit MRI Would Have
          Received as a Supplier, But For the Alleged Infringement, Is Unreasonable ...... 14

     E.   Ms. Bennis Has Only Offered a Lost Profits Opinion under *Panduit* ................. 15

     F.   Ms. Bennis's Reasonable Royalty Opinion Is Inadmissible Because She
          Gave no Explanation for Why the Facts or Factors in This Case Support
          Her Rate ............................................................................................................... 15

     G.   Ms. Bennis's Reasonable Royalty Opinion Is Inadmissible Because She
          Explicitly Invoked the EMVR Without Satisfying Its Preconditions................... 17

VI.  Daubert Argument 2:  MRI's Expert Opinions Regarding Non-infringing
     Alternatives Should Be Excluded ..................................................................................... 18

     A.   MRI's Expert Opinions on Availability of Non-infringing Alternatives Are
          Inadmissible Because They Are Based on an Incorrect Legal Standard .............. 18

     B.   MRI's Expert Opinions on Unacceptability of Non-Infringing Alternatives
          Are Inadmissible Because They Depend on Unsupported Personal Opinions ..... 18

    C.    Dr. Silzars's Opinion on Infringement by the Hyundai IT Product Is Inadmissible as MRI Concedes that It Is Incomplete and Unreliable ................... 19

VII.   Daubert Argument 3:  Dr. Silzars's Secondary Considerations Opinion Should Be Excluded Because it Is Unduly Conclusory and Provides No Support for Nexus ........... 20

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADCO Prods., Inc. v. Carlisle Syntec Inc.*,
110 F. Supp. 2d 276 (D. Del. 2000) ........................................................................................6

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
811 F.3d 1334 (Fed. Cir. 2016) ..............................................................................................2

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994) ..................................................................................................8

*AVM Techs., LLC v. Intel Corp.*,
C.A. No. 10-610-RGA, 2013 WL 126233 (D. Del. Jan. 4, 2013) .........................................18

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010) ..............................................................................................4

*Bosch Auto. Serv. Sols., LLC v. Matal*,
878 F.3d 1027 (Fed. Cir. 2017) ............................................................................................20

*Chase Bank USA, N.A. v. Hess*,
C.A No. 08-121-LPS, 2013 WL 867542 (D. Del. Mar. 7, 2013) ...........................................9

*Damiani v. Duffy*,
277 F. Supp. 3d 692 (D. Del. 2017) ......................................................................................10

*Datascope Corp. v. SMEC, Inc.*,
879 F.2d 820 (Fed. Cir. 1989) ..............................................................................................19

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ......................................................................................16, 17

*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ............................................................................................18

*Immersion Corp. v. HTC Corp.*,
C.A. No. 12-259-RGA, 2015 WL 834209 (D. Del. Feb. 24, 2015) ................................13, 14

*Intellectual Ventures I LLC v. Symantec Corp.*,
C.A. No. 10-1067-LPS, 2015 WL 294240 (D. Del. Jan. 21, 2015) ........................................5

*Jiminez v. All Am. Rathskeller Inc.*,
503 F.3d 247 (3d Cir. 2007) ...................................................................................................9

*Knowles Elecs. LLC v. Cirrus Logic, Inc.*,
    883 F.3d 1358 (Fed. Cir. 2018)......................................................................6

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012).......................................................................18

*Mobius Mgmt. Sys., Inc. v. Acartus, Inc.*,
    C.A. No. 05-346-SLR, 2006 WL 1788484 (D. Del. June 28, 2006) ......................................11

*Monsanto Co. v. Ralph*,
    382 F.3d 1374 (Fed. Cir. 2004)....................................................................15

*MyMail, Ltd. v. Am. Online, Inc.*,
    476 F.3d 1372 (Fed. Cir. 2007)......................................................................2

*Nat'l Prods. v. Arkon Res., Inc.*,
    C.A. No. 18-2936-AG, 2019 WL 1034321 (C.D. Cal. Jan. 9, 2019) ......................................7

*Novozymes A/S v. DuPont Nutrition Bioscis. APS*,
    723 F.3d 1336 (Fed. Cir. 2013)......................................................................6

*Plastic Omnium Adv. Innovation & Rsch. v. Donghee Am., Inc.*,
    C.A. No. 16-187-LPS, 2018 WL 2316637 (D. Del. May 22, 2018)..........................16, 17

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017)..............................................................14, 15

*Purdue Pharma L.P. v. Faulding Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000)......................................................................5

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998)......................................................................3

*In re Varma*,
    816 F.3d 1352 (Fed. Cir. 2016)......................................................................3

*XpertUniverse, Inc. v. Cisco Sys.*,
    C.A. No. 09-157-RGA, 2013 WL 865974 (D. Del. Mar 7, 2013)..........................................19

**Statutes**

35 U.S.C. § 284.....................................................................................15

35 U.S.C. § 287(a) ...........................................................................6, 7, 8

**Other Authorities**

FED. R. CIV. P. 56(e) ...............................................................................1

H.R. Rep. No. 112-98 (2011)...........................................................................................................8

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Description | Exhibit and/or Docket Number |
|---|---|---|
| AIA | Leahy-Smith America Invents Act, Public Law No. 112-29 | N/A |
| '287 Patent | U.S. Patent No. 9,629,287 | D.I. 208, Ex. 11 |
| '322 Patent | U.S. Patent No. 9,173,322 | D.I. 205, Ex. 4 |
| '325 Patent | U.S. Patent No. 9,173,325 | D.I. 206, Ex. 9 |
| '595 patent | U.S. Patent No. 8,854,595 | D.I. 213, Ex. A |
| '633 Patent | U.S. Patent No. 8,773,633 | D.I. 213, Ex. C |
| '713 Provisional | Provisional App. No. 61/053,713 | D.I. 242, Ex. CCCC |
| Bennis Rpt. | Expert Report and Disclosure of Melissa A. Bennis, dated January 17, 2019 | D.I. 209, Ex. 25 |
| Bennis Reply | Reply Expert Report and Disclosure of Melissa A. Bennis, dated March 11, 2019 | D.I. 209, Ex. 26 |
| Blonder Decl. | Declaration of Greg E. Blonder, Ph.D. in Support of Defendants' Motion for Partial Summary Judgment and to Exclude Certain Expert Testimony, dated May 12, 2019. | Ex.[1] 42 |
| Burns Decl. | Declaration of Gerald L. Burns, Jr. in Support of Defendants' Motion for Partial Summary Judgment and to Exclude Certain Expert Testimony, dated May 13, 2019 | Ex. 44 |
| ██████ | ████████████████████ | D.I. 209, Ex. 20 |
| Civiq | Defendant Civiq Smartscapes, LLC | N/A |
| Comark | Defendant Comark, LLC | N/A |

[1] References to Exhibit numbers herein without an accompanying docket item ("D.I.") number—i.e., Exhibits 42–43—indicate exhibits to the Declaration of Molly Grammel in Support of Defendants' Reply Brief in Support of their Motion for Summary Judgment and to Exclude Certain Expert Testimony, filed concurrently herewith.

| Abbreviation | Full Description | Exhibit and/or Docket Number |
|---|---|---|
| H.R. Rep. No. 112-98 (2011) | House of Representatives Report Number 112-98 dated June 1, 2011 from the Committee on the Judiciary recommending passage of bill H.R. 1249, also known as the "America Invents Act," amending title 35 United States Code | Ex. 43 |
| MRI | Plaintiff Manufacturing Resources International, Inc. | N/A |
| MRI's motion | Plaintiff's Motion for Summary Judgment and Daubert Motion | D.I. 207 |
| MRI Opp. | Brief in Support of Plaintiff's (MRI's) Response to Defendants' Motion for Partial Summary Judgment and to Exclude Certain Expert Testimony | D.I. 240 |
| MRI Resp. to Interrog. 16 | MRI's Objections and Responses to Defendants' Fourth Set of Interrogatories to Plaintiff (No. 16), dated April 23, 2018 | D.I. 208, Ex. 14 |
| ███████████ | ████████████████████████████████ ████████████████████ (MRI00014071–MRI00014080) | D.I. 243, Ex. 41 |
| PCB | Printed circuit board | N/A |
| PDM | Public display module | N/A |
| Silzars Invalidity Reb. | Rebuttal Validity Report of Dr. Aris Silzars, dated February 19, 2019 | D.I. 208, Ex. 13 |
| Williams Tr. | Deposition transcript of Dave Williams, dated October 15, 2018 | D.I. 222, Ex ZZ |

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In its opposition brief (D.I. 240), MRI almost never directly responds to the evidence and argument Defendants set forth in their opening brief in support of their summary judgment and *Daubert* motions (D.I. 203).  Instead, MRI serially constructs and responds to straw man arguments that are, at best, tangentially related to the issues at hand.  MRI has failed to respond to or contest the critical facts that underscore Defendants' motions.  Facts not "properly address[ed]" may be "consider[ed] . . . undisputed" on summary judgment.  FED. R. CIV. P. 56(e).  MRI's arguments are furthermore often based on incorrect or inapposite legal standards, irrelevant evidence, or misrepresentations of their experts' testimony—frequently by offering evidence and argument not found in the discovery record.  Summary judgment should be granted on each basis requested because there continues to be no genuine dispute of any *material* fact. Furthermore, all opinions of MRI's damages expert, Ms. Melissa Bennis, should be excluded, as well as certain opinions offered by its technical expert, Dr. Aris Silzars.

## ARGUMENT

### I.   SUMMARY JUDGMENT SHOULD BE GRANTED THAT ASSERTED CLAIM 7 OF THE '322 PATENT IS NOT INFRINGED



Because there is no dispute that ▮▮▮▮ in the accused Link kiosk is ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that the Link kiosk thus does not include ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ summary judgment that claim 7 of the '322

_____

[2] MRI argues the claims require a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (D.I. 240 at 2–3) (emphasis original)), but this is a different limitation from the one at issue, which recites ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 205, Ex 4, '322 patent at claim 4 (emphasis added).  Regardless, as noted above, it is undisputed that ▮▮▮▮▮▮▮▮▮▮▮ that MRI identifies as the infringing component is ▮▮▮▮▮▮▮▮▮

patent is not infringed—literally or under the doctrine of equivalents—should be granted.

MRI's dubious infringement theory asserts that the ███████ is satisfied not by the ███████ in the accused Link kiosks, but instead by the █████████████████ ███████████ No reasonable jury could find that the ███████████ is literally met by ████████████████. While MRI asserts that the ██████████████████ in the Link kiosk is the ██████████████ it does not dispute that (i) ██████████ ████████████████, (ii) ██████████████████████████████, and (iii) ██████████████████████████████████ . *Compare* D.I. 203 at 5–7, *with* D.I. 240 at 2–4 (not contesting these facts).

Whether ██████████████ in the Link kiosk can meet ██████████████████ ██████ limitation is not a factual dispute. D.I. 240 at 3. "Because there is no dispute regarding the operation" of the accused device, it is "amenable to summary judgment" as "a question of claim interpretation." *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007). MRI's interpretation is irreconcilable with the claim's plain language. *See* D.I. 203 at 6–7.

MRI's flimsy doctrine of equivalents argument cannot survive summary judgment either. As noted in Defendants' opening brief, the type of "broad and scant" equivalents opinion offered by Dr. Silzars (both in his expert reports and his summary judgment declaration) fails as a matter of law. *See* D.I. 203 at 7–8. His opinions are not only unduly conclusory but also fail to address "how the differences between" the claim and alleged equivalent are "insubstantial." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016). MRI's opposition adds nothing to Dr. Silzars's deficient opinion. D.I. 240 at 3–4.

---

████████████████████████████████ Defendants' expert did not agree with this infringement theory. *Compare* D.I. 240 at 3; *with* Ex. 42, Blonder Decl. at ¶¶ 2–10.

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED THAT ASSERTED CLAIMS 1 AND 2 OF THE '325 PATENT ARE NOT INFRINGED

Because there is no dispute that, rather than a ███████████████████████

████████████████████████████████████████████████████████████████████████

(D.I. 206, Ex. 9, '325 patent, claims 1–2), the accused Link kiosk ██████████████

██████████████████████████████████, summary judgment that claims 1 and

2 of the '325 patent are not infringed should be granted.

MRI concedes that the Link kiosk lacks ████████████████████████████

███████████████████████████. Rather, as MRI acknowledges, the Link kiosk has "█

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████." D.I. 240 at 5.  None of these components

████████████████████████████████ however, and despite MRI's argument, the claim

terms "comprising" and "a" do not eliminate the requirement that at least one component must

be present to satisfy the limitation.  *Compare* D.I. 240 at 6, *with Spectrum Int'l, Inc. v. Sterilite

Corp.*, 164 F.3d 1372, 1379–80 (Fed. Cir. 1998) ("'Comprising' is not a weasel word with which

to abrogate claim limitations."); *In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) (use of the

indefinite article "a" does not "serve to negate what is required by the language following 'a'").

MRI's misrepresentations of Defendants' arguments are not a basis to deny this motion.

For example, Defendants do not contend the claim covers only systems with *no more than* one

████████████████████████ D.I. 240 at 4–6.  But, the claim does require that there be *at least*

*one* ████████████████████████ and there is none in the Link.  *See* D.I. 203 at 8–10.

3

Defendants also have not asserted for the first time on summary judgment that the Link kiosk lacks ███████████████ as an affirmative non-infringement position.  D.I. 240 at 6.  Rather, Defendants are merely illustrating the deficiency in *MRI's* argument, since the Link kiosk cannot have both ██████████████████ under MRI's (incorrect) construction and also ███████████████  *See* D.I. 203 at 9–10.  While MRI tries to distinguish the *Becton* case in this respect, it only illustrates why its holding should be applied here.  *See* D.I. 240 at 6.  As MRI explains, in *Becton*, "the patentee was attempting to read the two separately claimed structures onto the exact same structural component in the accused device."  *Id.* (citing *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249 (Fed. Cir. 2010)).  MRI has done the same thing here, trying to read both the separately claimed ████████████████████ ██████████ onto the same structural component in the Link kiosk.  *See* D.I. 203 at 9–10.  Under MRI's infringement theory, █████████ in the Link kiosk ██████████████████ ██████████████████████████████████████████████ ██████████  D.I. 240 at 5.  Just like in *Becton*, the ███████████████ that MRI asserts satisfy ███████████████████ are part of the "same structural component" that MRI contends satisfies the separately claimed ████████████████  *Id.* at 6.  Under either party's theory, the Link kiosk does not infringe the '325 patent.

## III.   SUMMARY JUDGMENT SHOULD BE GRANTED THAT CLAIMS 1 AND 2 OF THE '287 PATENT ARE INVALID FOR LACK OF WRITTEN DESCRIPTION

MRI has presented no evidence that the inventor was in possession of the claimed "rear cooling chamber . . . containing an electrical component which is electrically connected to the electronic display" on May 16, 2008, which MRI contends is the effective filing date of the '287 patent.  Accordingly, there is no dispute that claim 18 of the '287 patent is invalid for lack of written description and summary judgment should be granted.

4

Neither of MRI's two counterarguments provides a basis for denying summary judgment. First, Provisional App. No. 61/053,713 ("the '713 provisional")[3] does not disclose a "rear cooling chamber . . . containing an electrical component which is electrically connected to the electronic display" and no reasonably jury could find it does.  At best, the portions of the '713 provisional relied on by MRI (*see* D.I. 240 at 8 (citing ¶¶ [0029], [0039], and [0040] and Figures 3–5)) disclose multiple gas chambers and the concept that a generic electrical component can be located in a gas chamber.  For example, paragraphs [0029] and [0039], which describe Figures 3 and 4, omit any mention of any electrical component at all, and merely note that there may be an "isolated gas cooling chamber" with "a first gas chamber" and "a second gas chamber."  *See* D.I. 242, Ex. CCCC at ¶¶ [0029], [0039], Figs. 3–4.  While paragraph [0040] (describing Figure 5) mentions "electronic components," it merely states that they may "be located anywhere throughout the second gas chamber."  *Id.* at ¶ [0040].  Nothing in this paragraph, Figure 5, or any other portion of the '713 provisional suggests that any such component is "electrically connected to the electronic display" as in claim 18.  *See id.* at ¶ [0040] & Fig. 5.

Because a POSA would not "immediately discern the claimed limitation" from this disclosure, it fails to provide adequate written description.  *See Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000).  MRI has presented no contrary evidence and, because its validity expert never opined about the'713 provisional (D.I. 208, Ex. 13, Silzars Invalidity Reb. ¶¶ 415–21), MRI should not be allowed to offer this new theory now or at trial. *See Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067-LPS, 2015 WL 294240, at *1 (D. Del. Jan. 21, 2015) (precluding party from asserting theory at trial it failed to disclose).

---

[3] MRI asserts that the '287 patent is entitled to a May 16, 2008 priority date based on the '713 provisional.  *See* D.I. 241, Ex. DDDD, Attach. 1 to MRI Supp. Resp. to Interrogs. 1–10 at 18.

Second, MRI relies on the original claims in the application filed *on June 13, 2016* that

issued as the '287 patent (D.I. 240 at 7–8), but this is insufficient given MRI's claim that the

patent is entitled to an effective filing date of *May 16, 2008*.  Adequate written description must

convey to a POSA "that, *as of the filing date sought*, the applicant was in possession of the

claimed invention."  *ADCO Prods., Inc. v. Carlisle Syntec Inc.*, 110 F. Supp. 2d 276, 291 (D.

Del. 2000) (emphasis added); *accord Knowles Elecs. LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358,

1367–68 (Fed. Cir. 2018).  When later claims are filed that claim priority to an earlier

application, they are invalid unless supported by the written description of the priority document.

*See Novozymes A/S v. DuPont Nutrition Bioscis. APS*, 723 F.3d 1336, 1344–51 (Fed. Cir. 2013)

(affirming judgment as a matter of law of invalidity where priority application did not support

claims that issued from a later-filed application).  Here, as in *Novozymes*, "no reasonable jury

could conclude that the ['713 provisional] provides adequate written description to support the

later-filed claims of the" '287 patent, and summary judgment is appropriate.  *Id.* at 1351.

**IV.   SUMMARY JUDGMENT OF NO PRE-NOTICE DAMAGES SHOULD BE
GRANTED BECAUSE MRI'S VIRTUAL MARKING WEBSITES DO NOT
ASSOCIATE THE PATENTED ARTICLES WITH ANY PATENT NUMBERS**

**A.   MRI Has Not Contested Any Material Fact Regarding Its Virtual Marking
Websites, Which Do Not Satisfy the Statutory Marking Requirements**

While MRI concedes summary judgment of no pre-notice damages should be granted for

the '322, '325 and '287 patents (D.I. 240 at 8 n.5), summary judgment should also be entered for

the '633 and '595 patents because, even accepting all evidence in MRI's favor (including new

evidence put forth for the first time in its opposition), its virtual marking websites failed to

"associate[] the patented article with the number of the patent" as required.  35 U.S.C. § 287(a).

As its only argument that any of its websites provided the necessary association, MRI

cites to an undifferentiated list of patents under the heading "MRI LCD Display Patents" with a

disclaimer that "[o]ne or more of the above listed MRI patents may be used by LG-MRI products." D.I. 240 at 10 (citing D.I. 242, Ex. EEEE at MRI00324215). Neither this heading nor the disclaimer does anything to associate the '633 or '595 patents with any allegedly patented article. MRI's websites thus cannot satisfy the virtual marking statute, regardless of whether the "patented articles" are the 46 product model numbers MRI identified in its interrogatory response (*see* D.I. 203 at 14) or its entire "BoldVu" line of products as asserted in its new sham declaration. MRI cannot dispute that its marking websites fail to mention a single product model number, or even the word BoldVu.[4] *See generally* D.I. 242, Ex. EEEE. MRI's websites thus fail to identify any "patented article" in the first place, let alone to "associate[]" such articles "with the number of" the '633 and '595 patents. 35 U.S.C. § 287(a).

MRI's cited cases are not to the contrary. Only one addressed a virtual patent marking website, and that case did not conclude, as MRI claims, that a "[w]ebsite that listed patents but did not identify specific patents with specific products was sufficient evidence to deny summary judgment." D.I. 240 at 10 (citing *Nat'l Prods. v. Arkon Res., Inc.*, C.A. No. 18-2936-AG, 2019 WL 1034321 (C.D. Cal. Jan. 9, 2019)). Instead, the *Arkon* court denied summary judgment because the defendant "failed to meet their burden of adequately raising the issue for summary adjudication . . . in their page and a half of briefing" on the subject. 2019 WL 1034321, at *16.

The legislative history of the AIA (which added the virtual marking provision to the existing physical marking regime) and the policy of the marking statute show that virtual marking requires more than what MRI has done. While there is no "association" clause in the statute for physical marking (*see* 35 U.S.C. § 287(a)), none is needed—physically affixing the

---

[4] While a search for "BoldVu" in MRI's marking website exhibit returns several hits, these are all titles of unrelated webpages open as separate tabs in the internet browser of computer used to take the screen captures making up the exhibit. *See, e.g.*, D.I. 242, Ex. EEEE at MRI00324201.

patent number on a product necessarily "associates" the two.  Thus, with physical marking there can be no ambiguity about what patents are "associated with" a product because the relevant patent numbers are physically on the product.  This clear association is so important that patent numbers may not even be marked on the product's *packaging* unless marking the product itself "can not be done" because of the "character of the article."  35 U.S.C § 287(a).  That the marking statute was amended to allow virtual marking *with the proviso that* a virtual marking website must "associate[] the patented article with the number of the patent" shows an intent to maintain the clear connection between the product and relevant patent numbers in order to provide public notice.  Indeed, the marking statute's "policy goal [is] notifying the public concerning the patent status of items in commerce."  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).  Congress was clear in amending the marking statute that, for virtual marking, the "burden will remain on the patent holder to demonstrate that the marking was effective."  Ex. 43, H.R. Rep. No. 112-98, at 52–53 (2011).  Whatever the minimum burden, MRI's websites cannot satisfy it where they provide *no* association between the "patented articles" and "the numbers of the" '633 and '595 patents.  35 U.S.C. § 287(a).  Summary judgment is warranted in Defendants' favor.

**B.      MRI's New Declaration Regarding Which of Its Products Practice the Asserted Patents Should Be Disregarded**

In response to an interrogatory seeking identification of "all MRI commercial products by product name and/or model number that MRI contends practice the Asserted Claims of the Patents-in-Suit," MRI responded on April 23, 2018 by stating that "the following MRI products practice the asserted claims of the Patents-in-suit."  D.I. 208, Ex. 14, MRI Resp. to Interrog. 16 at 2.  On a patent-by-patent basis, MRI specifically identified the model numbers of MRI products allegedly practicing each patents.  *Id.* at 2–7.  MRI contended that some products

8

practice every asserted patent while others practice only some asserted patents.  Notwithstanding

that the interrogatory invited an identification of patented products "by product name" the word

"BoldVu" does not appear anywhere in MRI's response.  *See generally id.*  The response was

verified by MRI's CTO and VP of Engineering, David Williams, who testified that, with great

care and expenditure of time, he ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████.[5]  D.I. 222, Ex ZZ, Williams Tr. at

184:16–186:2.  Fact discovery closed on November 30, 2018.  D.I. 163.  Before the close of fact

discovery, Defendants notified MRI that it failed to demonstrate that substantially all of the

products listed in response to Interrogatory 16 were marked as required by the marking statute.

MRI now submits a declaration from its CEO claiming that, ████████████████████

███████████████████████████████████████████████████████████

█████████████  D.I. 241, Ex. GGGG at ¶ 15.  Not only does the new declaration state merely

that ██████████████████████████████████████████, but it also contradicts

both MRI's sworn Interrogatory response and the testimony of its CTO.

This declaration should be disregarded as a sham declaration that "indicates only that"

MRI "is willing to offer a statement solely for the purpose of defeating summary judgment."

*Jiminez v. All Am. Rathskeller Inc.*, 503 F.3d 247, 253–54 (3d Cir. 2007).  The sham doctrine

applies not just to new sworn statements contradicting prior testimony, but also to new

statements "contradicting the admitted facts" in a prior document.  *Chase Bank USA, N.A. v.*

*Hess*, C.A No. 08-121-LPS, 2013 WL 867542, at *4 & n.48 (D. Del. Mar. 7, 2013) (applying

---

[5] Mr. Williams was designated as a Rule 30(b)(6) witness to testify concerning "the design, structure, and operation of the MRI Covered Product(s)" allegedly practicing the asserted patents.  *See* D.I. 222, Ex. ZZ, Williams Tr. at 17:15–19:9.

sham rule to disregard affidavit contradicting facts admitted in consent judgment). "Courts

cannot accord sham affidavits evidentiary weight," and MRI's new declaration asserting that all

MRI products sold under the trade name "BoldVu" practice all of the asserted claims,

contradicting MRI's interrogatory response and sworn testimony by the witness who verified it,

should not be considered in evaluating Defendants' motions for summary judgment and to

exclude MRI's expert testimony. *Damiani v. Duffy*, 277 F. Supp. 3d 692, 701 (D. Del. 2017).

## V.   DAUBERT ARGUMENT 1:  MS. BENNIS'S DAMAGES OPINIONS SHOULD BE EXCLUDED

### A.   Ms. Bennis's Lost Profits Opinion Is Inadmissible Because MRI Concedes that ▮▮▮▮▮▮ Is "a Necessary Component of" Her Opinion

Ms. Bennis's lost profits opinion should be excluded because MRI concedes that (i) the



▮▮▮▮▮▮▮▮▮▮▮▮ precludes MRI from ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ (D.I. 240 at 14), (ii) the ▮▮▮

▮▮▮▮ Ms. Bennis used to derive MRI's incremental costs for the LinkNYC project was

"necessary" to her lost profits opinion (*id.* at 17), and (iii) MRI's CFO made ▮▮▮▮▮

using information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

*Id.* at 16–17 (not contesting ▮▮▮▮▮▮▮).  MRI admits it derived

the ▮▮▮▮ from material ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮. D.I. 241, Ex. GGGG

¶¶ 49–53; Ex. 44, Burns Decl. ¶¶ 4–8.  Civiq does not ▮▮▮▮▮▮▮

▮▮▮▮. Ex. 44, Burns Decl. ¶¶ 4–8.  MRI did not seek production of ▮

---

[6] Defendants do not assert ▮▮▮▮▮▮▮▮▮, as MRI
claims. *See* D.I. 240 at 13–14.  Rather, ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████████

████████████████████████████████████████████████████[7] *See*

D.I. 240 at 13–19.  Since there is no dispute that Ms. Bennis could not have calculated MRI's

alleged "amount of [lost] profit" under *Panduit* Factor 4 without this information (*see* D.I. 203 at

20–21; D.I. 240 at 17), Ms. Bennis's lost profits opinion should be excluded.

Instead of contesting that Ms. Bennis calculated lost profits based on impermissible

information, MRI relies on inapposite legal standards and cites other evidence that is not

sufficient on its own to support Ms. Bennis's lost profits opinion.  While MRI rightly notes that

████████████████████████████████████████████████

████  explicitly prohibits what Ms. Bennis has done ███████████████████████

████████████████████████████; *see also* D.I. 203 at 18–19.  It is also

immaterial that Ms. Bennis separately looked at ████████████████████ to calculate

the LinkNYC average sale price, and that she referred to MRI internal data to determine minor

add-on costs, like ███████████████  *See* MRI. Opp. at 15–16.  It is undisputed that the

████████████████████████████ was necessary to her opinion.  *See* D.I. 240 at 16-17.

████████  MRI also admits ███████████████████████████████████████████

████████████████████████████████████████[8]  MRI

_____

[7] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[8] Defendants also have not waived ████████████████ objection (*see* D.I. 240 at 16–17), which has
been clear at least since ████████████████████████████████████████████████
████████████████████████████████  Furthermore, it was not until the close of expert discovery that Defendants knew
████████████████ would form an indispensable part of Ms. Bennis's lost profits calculation.

asserts only that ████████████████ *some* information *similar* to ██████████████████████

on which Ms. Bennis relied.  *See* D.I. 240 at 18.  This cannot save her opinion, as she did not

rely on this "similar" subset ███████████████ (*id.*); she relied on ████████████████

████████████████████.  *See* D.I. 203 at 20–21.  Furthermore, MRI's inclusion of

███████████████████████████████████ does not absolve it from ████████████

████████████████████.  *See* D.I. 240 at 16–18.  It cannot be the case (and MRI cited no

authority to suggest) that █████████████████████████████████████████

████████████████████.  *See id.*  To the contrary, ███████████████████████

███████████████████████████████████.  *See* D.I. 203 at 18–19.

The court should reject MRI's baseless suggestion that Ms. Bennis's opinion can survive,

notwithstanding that █████████████████ is improper, because she is "entitled to

rely on testimony from MRI" witness Steve Stoeffler.  D.I. 240 at 18–19.  MRI does not dispute

that any testimony from Mr. Stoeffler regarding MRI's incremental costs would itself rely on █

███████████████████████████████████ *Id.* ████████████████████████

█████████████████████████████████████████████

██████████ basis for Mr. Stoeffler's testimony does not merely "go to the *weight* of the

evidence," as MRI argues.  *Id.* (emphasis in original).  Through Mr. Stoeffler or otherwise, Ms.

Bennis and MRI may not ██████████████████████████████████████████

### B.    Ms. Bennis's Lost Profits Opinion Is Inadmissible Because She Did Not Rely Upon Adequate Support to Show Demand for the Patented Product

Because Ms. Bennis's lost profits opinion lacks adequate support for *Panduit* Factor 1

(demand for products embodying the claimed technology), her opinion should be excluded.

Whether focusing on products sold by MRI or the accused LinkNYC kiosk, Ms. Bennis

failed to provide the correct analysis for demand. [9]  MRI's attorney argument to shore up her

conclusions is irrelevant where she did not consider it in forming her opinions.  MRI is bound by

its sworn discovery responses and it cannot now assert via a sham declaration that all its BoldVu

products are patented.  *See supra* at 8–10.  Thus, generalized sales for MRI's products in the

aggregate are not enough to show demand for the *patented* subset of its products.  *See* D.I. 240 at

22–23; D.I. 203 at 26–27.  As to the accused product, demand will only satisfy *Panduit* Factor 1

if the device is "similar in price and product characteristics" to the patented product.  *See* D.I.

203 at 25, 27.  As Ms. Bennis never made this comparison (*see id.*), MRI's attempt to provide

the analysis now via attorney argument based on evidence Ms. Bennis did not consider in

rendering her opinion on demand is useless.  *See* D.I. 240 at 23–24.

### C.     Ms. Bennis's Lost Profits Opinion Is Inadmissible Because the Opinion that MRI's Lost Profits Would Have Included Products with No Functional Relationship to the Patented Invention Is Legal Error

Ms. Bennis's lost profits opinion should be excluded because she ignores that lost profits

damages may only include sales of unpatented products if there is a "functional relationship"

between the patented and unpatented products.  *Immersion Corp. v. HTC Corp.*, C.A. No. 12-

259-RGA, 2015 WL 834209, at *4 (D. Del. Feb. 24, 2015).  "If they can function independently,

patented and unpatented products do not constitute a functional unit."  *Id.*  MRI does not dispute

that its patented cooling technology resides in a product called a "PDM" that it sells to customers

who mount it into their kiosks, which can include separate components sourced by the customer.

*See* D.I. 203 at 22–24.  MRI also does not dispute that the LinkNYC kiosk contains unpatented

products such as ███████████ , and that ██████ is not cooled in the LinkNYC kiosk (D.I.

203 at 23–24), meaning the unpatented ████ and MRI's patented PDM product would be able to

---

[9] MRI misquoted Defendants' brief to incorrectly suggest it asserted a legal standard requiring demand for the patented *feature* of a product.  *Compare* D.I. 240 at 23 *with* D.I. 203 at 26.

"function independently" in the LinkNYC kiosk such that they "do not constitute a functional

unit." *Immersion*, 2015 WL 834209, at *4.  Ms. Bennis's lost profits opinion should be excluded

because her calculation includes sales of unpatented products found in the LinkNYC kiosk, ███

████, without a functional relationship to MRI's patented PDM product.

 MRI baselessly tries to recast the "patented product" as the *entire* LinkNYC kiosk to

avoid the law prohibiting lost profits from including functionally unrelated, unpatented products

within the kiosk.  *See* D.I. 240 at 21.  MRI asserts ██████ is "part of the kiosk as sold" (*id.*) but

that is only true of sales to the end customer, CityBridge.  Here, Ms. Bennis opines that MRI has

lost profits on sales to *Civiq*, with MRI in the role of a manufacturer selling the LinkNYC

kiosk's parts to Civiq.  D.I. 209, Ex. 25, Bennis Rpt. at 43–46.  There is no factual or legal basis

for MRI to erase the boundaries between its patented product (the PDM), and the unpatented

products in the LinkNYC kiosk (e.g., ████████████████████, etc.), by miscasting these

products as "functionalities of the kiosk" (D.I. 240 at 21), when they are independent products

that could be separately sourced.  MRI cannot thus avoid the rule that lost profits must exclude

unpatented products lacking a "functional relationship" to the patented product.

 **D.** **Ms. Bennis's Lost Profits Opinion Is Inadmissible Because MRI Concedes that Her Opinion Regarding the Amount of Profit MRI Would Have Received as a Supplier, But For the Alleged Infringement, Is Unreasonable**

 Ms. Bennis's lost profits opinion should be excluded because neither she nor MRI has

even attempted to show a "reasonable probability" that, "but for" the alleged infringement, Civiq

would have paid 100% of its per-unit sales revenue to MRI as a supplier for the LinkNYC kiosk

as she has opined.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369,

1380 (Fed. Cir. 2017).  Such an agreement is facially implausible (*see, e.g.*, Ex. 44, Burns Decl.

at ¶¶ 7–9), and neither MRI nor Ms. Bennis offered any argument or opinion that it would be

reasonably probable but for infringement.  *See* D.I. 240 at 21–22.  Instead, MRI's only defense

of Ms. Bennis's opinion is the legally baseless assertion that lost profits damages may "exceed . . . profits." *Id.* MRI's analogy to royalty damages does not support such a result. *Id.* Unlike lost profits, royalty damages are a statutory minimum remedy for infringement. *See* 35 U.S.C. § 284. While royalty damages may sometimes exceed an infringer's profit, this is because the law requires a royalty as a remedy for infringement, even when the parties would not actually have agreed on one in the real world. *Cf. Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004). By contrast, there is no statutory entitlement to lost profits. Instead, to recover lost profits, the law requires MRI to prove a "reasonable probability" that, in a "but for" market, it would have made "the amount of profit" it claims to have lost. *Presidio*, 875 F.3d at 1380. Ms. Bennis's lost profits opinion failed to comply with this standard, and as such should be excluded.

### E. Ms. Bennis Has Only Offered a Lost Profits Opinion under *Panduit*

MRI cannot prevent exclusion of Ms. Bennis's deficient lost profits opinion under the *Panduit* factors by claiming now for the first time that it is entitled to lost profits outside this framework. D.I. 240 at 19–20. While it is true that *Panduit* is not the only way a patentee can prove "but for" entitlement to lost profits, this is irrelevant here because Ms. Bennis has *only* opined that MRI is entitled to lost profits under the *Panduit* factors. *See* D.I. 209, Ex. 25, Bennis Rpt. at 29–46; D.I. 209, Ex. 26, Bennis Reply at 4–12. Because the opinion she has actually rendered is inseparable from the *Panduit* factors, and her analysis of these factors is inadmissible, this opinion should be excluded. *See* D.I. 203 at 17–27; *supra* at 10–15.

### F. Ms. Bennis's Reasonable Royalty Opinion Is Inadmissible Because She Gave no Explanation for Why the Facts or Factors in This Case Support Her Rate

Ms. Bennis's royalty opinion should be excluded because it is clear on the face of her report that, despite MRI's claims to the contrary (D.I. 240 at 26–28), her calculation of ██% rate is untethered to the facts of this case. In just three sentences, Ms. Bennis set out her opinion

that (1) ██████████ ██████████'s █% rate should be apportioned to the relevant

technology and (2) the rate in this case would be at least double that apportioned amount:



> Conservatively speaking, ███████████████████████████ would
> suggest █% might be assigned to each technology. However, I understand that
> even then, the more realistic split of that █% value would be ███████████
> ████████████████████████████████████. This exercise suggests
> that at least █% of the ████████████ related to ██████
> ██████████. A license to ████████
> ████████████████████████████ would sensibly drive at least double
> the royalty than that which was provided ███████████.

D.I. 209, Ex. 25, Bennis Rpt. at 76–77. These sentences include no citations to any factual or

evidentiary support,[10] and provide no explanation for *why* a ██ to ██ split of the ████

royalty rate is "more realistic" or *why* the upward factors she mentions "would sensibly" require

"at least double" the apportioned ████████ rate in this case.

　　This lack of any explanation why the evidence supports Ms. Bennis's rate renders her

royalty opinion inadmissible. This is the very reason Ms. Bennis's royalty rate opinion was

found improper in *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d

1332, 1349 (Fed. Cir. 2018). *See* D.I. 203 at 28, 31. While "mathematical precision is not

required, some explanation of both why and generally to what extent the particular factors

impact the royalty calculation is needed." *Exmark*, 879 F.3d at 1350 (alterations omitted). As it

was in *Exmark*, Ms. Bennis's royalty opinion should be found inadmissible here.

　　The Delaware case MRI cites does not stand for the proposition that damages experts

may "arbitrarily double[]" royalty rates in their opinions without issue. D.I. 240 at 28 (citing

*Plastic Omnium Adv. Innovation & Rsch. v. Donghee Am., Inc.*, C.A. No. 16-187-LPS, 2018 WL

---

[10] Indeed, the only citations provided in the entire surrounding paragraph are to the ███████
████ and "Discussion with William Dunn." *Id.* at 76-77 nn.384–85. To the extent Ms.
Bennis's royalty rate calculation is solely supported by Mr. Dunn's personal views, MRI may not
submit an interested, lay witness's belief in the guise of expert testimony. *See* D.I. 203 at 23.

2316637 (D. Del. May 22, 2018)).  Unlike here, in *Donghee* the expert "considered the totality of the evidence in connection with all 15 *Georgia-Pacific* factors in determining" that doubling was appropriate.  2018 WL 2316637, at \*3.  In fact, the *Donghee* court acknowledged that exclusion was warranted in *Exmark*, where Ms. Bennis "failed to explain how . . . any of the *Georgia-Pacific* factors [] led to her 5% royalty rate."  *Id.* at \*4 (citing *Exmark*, 879 F.3d at 1350).

MRI's only remaining defense of Ms. Bennis's royalty rate calculation is that she began from a reasonable starting point, but this cannot save her opinion.  *See* D.I. 240 at 25–26.  Rule 702 does not permit introduction of an expert opinion that merely *starts* with a reasonable premise and proceeds from there with an unreliable method that is untethered to the facts of the case.  FED. R. EVID. 702 (expert testimony must be "based on sufficient facts or data," "the product of reliable principles and methods," and the "reliab[e] appli[cation]" of these "principles and methods to the facts of the case").  That Ms. Bennis began with a relevant license does nothing to remedy the deficiencies in her royalty rate analysis, which should be excluded for failure to explain why or how her ▮% rate is supported by any facts or factors in the case.

### G.   Ms. Bennis's Reasonable Royalty Opinion Is Inadmissible Because She Explicitly Invoked the EMVR Without Satisfying Its Preconditions

Ms. Bennis's royalty opinion should be excluded because she explicitly justified her choice of royalty base by relying on the entire market value rule (EMVR), but failed to satisfy the conditions for that rule.[11]  *See* D.I. 209, Ex. 25, Bennis Rpt. at 52–53 (opining that the EMVR justified "includ[ing] the revenue related to the entire accused product in [her] royalty base); D.I. 203 at 31–34.  MRI is wrong that the EMVR does not apply when the patented technology is a "critical" part of a multi-component product.  D.I. 240 at 30–31.  The EMVR

---

[11] While an expert may offer a proper royalty damages opinion by adequately apportioning the royalty rate rather than the base (indeed, this is what Mr. Eichmann did), this is irrelevant because there is no indication that Ms. Bennis did so.  Instead, the only adjustments she made determining her royalty base were to *increase* it.  *See* D.I. 209, Ex. 25, Bennis Rpt. at 76–78.

requires "showing that the patented feature alone causes customers to purchase the accused

products," and is not satisfied by "merely show[ing] that the [patented technology] is viewed as

valuable, important, or even essential to the use of the" product.  *See* D.I. 203 at 32 (quoting

*LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *AVM Techs.,*

*LLC v. Intel Corp.*, C.A. No. 10-610-RGA, 2013 WL 126233, at *2 (D. Del. Jan. 4, 2013)).  The

rule would be meaningless if showing that the patented technology is "critical" (D.I. 240 at 30–

31), which would not satisfy the rule, could avoid application of the rule in the first place.

## VI.   DAUBERT ARGUMENT 2:  MRI'S EXPERT OPINIONS REGARDING NON-INFRINGING ALTERNATIVES SHOULD BE EXCLUDED

### A.   MRI's Expert Opinions on Availability of Non-infringing Alternatives Are Inadmissible Because They Are Based on an Incorrect Legal Standard

MRI's adherence to an incorrect legal standard confirms that Ms. Bennis's and Dr.

Silzars's opinions regarding availability of non-infringing alternatives should be excluded.  MRI

maintains that availability depends on "evidence that [Civiq] considered any of these products,"

and asserts that no alternative can have been available because otherwise "Civiq would have

chosen" to sell it. D.I. 240 at 34, 37.  Like its experts, MRI looks only to the actual, historical

market, but non-infringing alternatives are evaluated in a "'but for' inquiry . . . requir[ing] a

reconstruction of the market, as it would have developed *absent the infringing product*."  *Grain*

*Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) (emphasis

added).  Here, there is no dispute that the asserted non-infringing alternatives use cooling

technology that pre-dates the alleged date of first infringement.  Because MRI and its experts

refuse to employ the correct, "but for" standard for availability, MRI's expert opinions regarding

availability of non-infringing alternatives should be excluded.

### B.   MRI's Expert Opinions on Unacceptability of Non-Infringing Alternatives Are Inadmissible Because They Depend on Unsupported Personal Opinions

MRI's opposition confirms that its expert opinions regarding acceptability of non-infringing alternatives should be excluded because they are based on uncorroborated personal belief.  MRI argues that Ms. Bennis's opinion is supported by testimony on the merits of MRI's products (D.I. 240 at 32), but does not establish that non-infringing alternatives would have been unacceptable.  The only remaining evidence Ms. Bennis relied on is Mr. Dunn's "belief" that there were no acceptable substitutes.  *Id.*  While she is permitted to rely on information provided by others (*id.*), her "unfiltered regurgitation" of Mr. Dunn's belief "adds nothing and therefore is not helpful to a jury."  *XpertUniverse, Inc. v. Cisco Sys.*, C.A. No. 09-157-RGA, 2013 WL 865974, at *3 (D. Del. Mar 7, 2013).  Similarly, while MRI claims Dr. Silzars's opinion that ███████████ products are always unacceptable is "based upon years of experience and evidence in the record," neither MRI nor Dr. Silzars identifies any such experience or evidence.  D.I. 240 at 37.  Therefore, MRI's expert opinions regarding acceptability should be excluded.

## C.   Dr. Silzars's Opinion on Infringement by the Hyundai IT Product Is Inadmissible as MRI Concedes that It Is Incomplete and Unreliable

Dr. Silzars's opinion that the Hyundai IT 55-inch outdoor display product infringes the patents-in-suit should be excluded because he performed no infringement analysis.  MRI does not try to defend Dr. Silzars's opinion under Rule 702, instead arguing it should be admitted, despite its deficiencies, if Defendants' expert is permitted to testify that the Hyundai IT product is a non-infringing alternative.  D.I. 240 at 36.  First, MRI has not challenged the opinion that the Hyundai IT product is a non-infringing alternative (D.I. 207 (MRI's motion)), and it cites no legal basis for its proposal.  Second, Defendants have no burden to prove an alternative does not infringe—instead it is *MRI's* burden to show that an alleged alternative *does* infringe.  *See Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989) (finding evidence "sufficient . . . to carry *[patentee's] burden* of proving that the [alleged alternative] infringes") (emphasis

19

added).  Dr. Silzars's infringement opinion as to the Hyundai IT product should be excluded.

**VII.  DAUBERT ARGUMENT 3:  DR. SILZARS'S SECONDARY CONSIDERATIONS OPINION SHOULD BE EXCLUDED BECAUSE IT IS UNDULY CONCLUSORY AND PROVIDES NO SUPPORT FOR NEXUS**

Dr. Silzars's opinion regarding secondary considerations should be excluded as providing no independent analysis or support for the requisite nexus.  *See* D.I. 203 at 38–40.  The claim that Dr. Silzars "reviewed the facts presented and provided his own analysis" (D.I. 240 at 39) is belied by his report.  *See* D.I. 203 at 38–40.  And MRI's assertion that Dr. Silzars "relie[d] on" evidence "as cited in MRI's response to Civiq's Interrogatory 18" cannot stand where Dr. Silzars testified that he could not recall the response or having reviewed it.  *See* D.I. 203 at 39.

Contrary to MRI's argument, Dr. Silzars's opinions fail to identify any "specific product," and so do not qualify for a presumption of nexus.  *See* D.I. 240 at 39.  First, the new sham declaration that asserts that all products sold under the trade name "BoldVu" are patented should be disregarded.  *See supra* at 8–10.  Second, even if MRI had always contended that all "BoldVu" products were patented, neither Dr. Silzars nor any other witness has described which products make up the "BoldVu" line.[12]  Claiming that all products sold under the trade name "BoldVu" are patented does not identify "a specific product" for a presumption of nexus.  *See Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1037 (Fed. Cir. 2017) (finding no nexus where patentee made several product models and expert stated "without explanation, that [the expert] 'understand[s] that all of [the products] are covered by [the patent]'").

**<u>CONCLUSION</u>**

For the reasons stated above and in their opening brief Defendants' motions for partial summary judgment and to exclude certain expert testimony should be granted.

---

[12] For example, MRI asserts in its brief that its "Urban Panel" is a "BoldVu display[]," but does not provide any explanation, citation, or basis for this claim.  D.I. 240 at 39.

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com
*Attorneys for Defendants*

OF COUNSEL:
Douglas J. Kline
Srikanth K. Reddy
Molly R. Grammel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1209

Naomi L. Birbach
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 459-7374

Yuval H. Marcus
Cameron S. Reuber
Matthew L. Kaufman
Lori L. Cooper
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, NY 10601
(914) 288-0022

Dated: March 13, 2019

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on May 13, 2019, this document was served

on the persons listed below in the manner indicated:

**BY EMAIL**

Arthur G. Connolly, III
Ryan P. Newell
Kyle Evans Gay
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
kgay@connollygallagher.com

Jeffrey S. Standley
James Lee Kwak
F. Michael Speed, Jr.
Beverly A. Marsh
STANDLEY LAW GROUP LLP
6300 Riverside Drive
Dublin, OH 43017
(614) 792-5555
jstandley@standleyllp.com
jkwak@standleyllp.com
mspeed@standleyllp.com
bmarsh@standleyllp.com

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants/*
*Counterclaim Plaintiffs*