IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MANUFACTURING RESOURCES
INTERNATIONAL, INC.,

            Plaintiff;

     v.                                   Civil Action No. 17-269-RGA

CIVIQ SMARTSCAPES, LLC, et al.,

            Defendants.

## MEMORANDUM OPINION

Arthur G. Connolly III, Ryan P. Newell, and Kyle Evans Gay, CONNOLLY GALLAGHER
LLP, Wilmington, DE; Jeffrey S. Standley, James Lee Kwak (argued), and F. Michael Speed, Jr.
(argued), STANDLEY LAW GROUP LLP, Dublin, OH, attorneys for Plaintiff.

John W. Shaw (argued), Karen E. Keller, David M. Fry, and Nathan R. Hoeschen, SHAW
KELLER LLP, Wilmington, DE; Douglas J. Kline (argued), Srikanth K. Reddy (argued), and
Molly R. Grammel, GOODWIN PROCTER LLP, Boston, MA; Naomi L. Birbach, GOODWIN
PROCTER LLP, New York, NY; Yuval H. Marcus, Cameron S. Reuber, Matthew L. Kaufman,
and Lori L. Cooper, LEASON ELLIS LLP, White Plains, NY, attorneys for Defendants.

September _4_ , 2019



**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court are Plaintiff's *Daubert* Motion (D.I. 207) and Defendants' *Daubert* Motion. (D.I. 202). The parties have fully briefed the issues. (D.I. 203, 212, 239, 240, 247, 252). I heard helpful oral argument on August 22, 2019. (Hr'g Tr.).

## I.   BACKGROUND

Plaintiff Manufacturing Resources International, Inc. filed suit against Defendants Civiq Holdings, Civiq Smartscapes, Comark Holdings, and Comark on March 14, 2017 alleging infringement of seventeen patents.[1] (D.I. 1 ¶ 144). Defendants counterclaimed. (D.I. 18). Both parties have amended their claims. (D.I. 84, 101). The parties completed fact discovery on November 30, 2018 and expert discovery on April 5, 2019. (D.I. 163). Trial is scheduled to begin on September 9, 2019. (D.I. 26).

The disputed patent claims remaining in the case are claim 1 of U.S. Patent No. 8,854,595 ("the '595 Patent"), claims 8, 11, and 14-15 of U.S Patent No. 8,854,572 ("the '572 Patent"), claims 2 and 6 of U.S. Patent No. 8,773,633 ("the '633 patent"), claim 18 of U.S. Patent No. 9,629,287 ("the '287 patent"). (D.I. 212 at 3; D.I. 264). I have granted summary judgment of infringement as to claims 1 and 2 of the U.S. Patent No. 9,173,325 ("the '325 patent"). (D.I. 282 at 9; D.I. 283).

Plaintiff moves to exclude the opinions of Mr. Eichmann, Defendants' damages expert, relating to forward citation analysis and reasonable royalty calculations. (D.I. 212 at 3). Defendants move to exclude (1) all damages opinions from Plaintiff's damages expert, Ms. Bennis; (2) both Dr. Silzars' and Ms. Bennis' opinions regarding non-infringing alternatives; and (3) Dr.

---

[1] U.S. Patent Nos. 8,854,595, 9,173,322, 8,767,165, 8,274,622, 8,482,695, 8,854,572, 9,089,079, 8,373,841, 8,351,014, 9,030,129, 9,167,655, 8,125,163, 8,829,815, 9,313,917, 8,497,972, 8,016,452, and 9,448,569. (D.I. 1 ¶ 144).

Silzars' testimony regarding secondary considerations and infringement by Hyundai products.

(D.I. 203 at 1-2).

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and

states:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if: (a) the expert's scientific, technical, or other
> specialized knowledge will help the trier of fact to understand the
> evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable
> principles and methods; and (d) the expert has reliably applied the
> principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony:
> qualification, reliability and fit.    Qualification refers to the
> requirement that the witness possess specialized expertise.  We have
> interpreted this requirement liberally, holding that a broad range of
> knowledge, skills, and training qualify an expert.   Secondly, the
> testimony must be reliable; it must be based on the "methods and
> procedures of science" rather than on "subjective belief or
> unsupported speculation"; the expert must have "good grounds" for
> his or her belief.  In sum, *Daubert* holds that an inquiry into the
> reliability of scientific evidence under Rule 702 requires a
> determination as to its scientific validity.  Finally, Rule 702 requires
> that the expert testimony must fit the issues in the case.  In other
> words, the expert's testimony must be relevant for the purposes of
> the case and must assist the trier of fact.  The Supreme Court
> explained in *Daubert* that Rule 702's 'helpfulness' standard requires
> a valid scientific connection to the pertinent inquiry as a
> precondition to admissibility.
>
> By means of a so-called "*Daubert* hearing," the district court acts as
> a gatekeeper, preventing opinion testimony that does not meet the
> requirements of qualification, reliability and fit from reaching the
> jury.  *See Daubert* ("Faced with a proffer of expert scientific
> testimony, then, the trial judge must determine at the outset,
> pursuant to Rule 104(a) of the Federal Rules of Evidence whether
> the expert is proposing to testify to (1) scientific knowledge that (2)

will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (cleaned up).[1]

## III.   DISCUSSION

### A.  Mr. Eichmann's Forward Citation Analysis

Plaintiff moves to exclude the portion of Mr. Eichmann's opinions relating to the calculation of a reasonable royalty due to Mr. Eichmann's reliance on a forward citation analysis. (D.I. 212 at 36). Plaintiff argues that Mr. Eichmann's forward citation analysis is not a reliable principle or method. (*Id.*). Defendants argue that forward citation analysis has been accepted as a reliable method by multiple courts and Plaintiff's objections go to weight and credibility, not admissibility. (D.I. 239 at 34-40).

Forward citation analysis is a method of estimating the value of a particular patent based on the number of times the patent is cited by later patents. (D.I. 212 at 36). Mr. Eichmann's forward citation analysis begins with a license agreement between Plaintiff and OnDIGItech in 2009, which licensed the '064 application (the parent provisional of all asserted patents in this case), as well as another provisional application, for a lump sum of $500,000 and a royalty of 6% on gross sales of licensed products. (*Id.* at 37). Mr. Eichmann's opinion uses a forward citation analysis to calculate the relative value of the asserted patents, using the 6% royalty in the OnDIGItech license as the value for all granted patents originating from the two applications. (D.I. 210, Ex. 32 ¶¶ 133-38).

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the recent amendments to it were not intended to make any substantive change.

"[D]amages models are fact-dependent." *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). To that end, "there may be more than one reliable method for estimating a reasonable royalty." *See Apple v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). Multiple courts have found forward citation analyses to be reliable. *See Comcast Cable Comm'ns, LLC v. Sprint Comm'ns Co., LP*, 218 F. Supp. 3d 375, 383-84 (E.D. Pa. 2016); *Intel Corp. v. Future Link Sys.*, 2017 WL 2482881, at *4 (D. Del. June 1, 2017); *Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1178517, at *3-4 (D. Del. Mar. 13, 2019). Forward citation analysis has an academic pedigree that supports it as a reliable methodology. *See Comcast*, 218 F. Supp. 3d at 383 nn. 8-9 (citing Dietmar Harhoff, Frederic Scherer, and Katrin Vopel, *Citation, family size, opposition and the value of patent rights*, Research Policy, 1596 (2002); Bronwyn H. Hall, Adam Jaffe, and Manuel Trajtenberg, *Market Value and Patent Citations*, RAND Journal of Economics 36 (1) (Spring 2005); Manuel Trajtenberg, *A Penny for Your Quotes: Patent Citations and the Value of Innovations*, RAND Journal of Economics 21 (1) (Spring 1990); Adam B. Jaffe and Gaétan de Rassenfosse, *Patent Citation Data in Social Science Research: Overview and Best Practices*, Nat'l Bureau of Econ. Research Working Paper Series (2016), *available at* http://www.nber.org/papers/w21868.) Even in *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, at *7-8 (N.D. Cal. July 14, 2015), upon which Plaintiff relies, the expert's forward citation analysis was only unreliable because the expert had not tied the forward citation analysis to the facts of the case. Thus, the correct inquiry is whether Mr. Eichmann's forward citation analysis fails to take into consideration the specific facts of this case such that it is unreliable.

Plaintiff asserts that Mr. Eichmann's forward citation analysis does not consider the context of the technology that the accused infringer actually wanted—critical technology for a viable outdoor display. (D.I. 212 at 40). But Mr. Eichmann ties his forward citation analysis to a specific comparable license between Plaintiff and OnDIGItech. (D.I. 210, Ex. 32 ¶¶ 134-35). Plaintiff's disagreement with Mr. Eichmann's conclusions about the value of its patent is an issue of weight rather than admissibility. "At base, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *Bayer HealthCare LLC v. Baxalta Inc.*, 2019 WL 330149, at *1 (D. Del. Jan. 25, 2019) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). Forward citation analysis can be a reliable method to decide the relative value of patents and to assist in determining a reasonable royalty. Mr. Eichmann sufficiently ties his analysis to the facts of this case. Plaintiff's arguments thus go to the weight and credibility of Mr. Eichmann's testimony, which can be addressed on cross-examination. Thus, I will deny Plaintiff's *Daubert* motion.

### B.  Ms. Bennis' Damages Opinion

Defendants ask the Court to exclude the entirety of Ms. Bennis' damages opinions. Defendants assert that Ms. Bennis' lost profits opinion is flawed because (1) Ms. Bennis improperly relies on information exchanged during confidential settlement communications, (2) improperly concludes without support that Defendants would have purchased the entire Link Kiosk from Plaintiff rather than the claimed display assembly and paid the entirety of the price Defendants charge their own customers, and (3) improperly concludes that demand exists for the patented product without any support of reliable evidence. (D.I. 203 at 17-18). Defendants also assert that Ms. Bennis' reasonable royalty opinion should be excluded because (1) the royalty rate was derived based on two independent arbitrary calculations unsupported by the evidence, and (2)

6

her opinion that the entire market value rule applies is unsupported by any evidence that the patented features drive demand for the accused products. (*Id.* at 18).

### 1. Lost Profits Opinion

Defendants challenge Ms. Bennis' lost profits opinion on three bases: (1) improper reliance on information received during confidential settlement negotiations, (2) insufficient facts supporting her conclusion that in the "but-for" world, Defendants would have purchased an entire kiosk from Plaintiff rather than the smaller display assembly component, and (3) insufficient facts to support a finding that demand exists for the patented product. (*Id.* at 17-18).

Defendants assert that Ms. Bennis' lost profits opinion improperly relies on incremental cost and other calculations provided by Defendants in confidential settlement communications protected by both Federal Rule of Evidence 408 and a Non-Disclosure Agreement. (*Id.* at 18).

I agree. Under Rule 408, "settlement offers and negotiations offered to prove the amount of damages owed on a claim" are not permitted. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). "Evidence of prior settlement negotiations in a pending patent infringement matter is generally forbidden under [Rule] 408." *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 444 (D. Del. 2007). In this case, financial information provided by Defendant to Plaintiff was also protected by agreement. The Nondisclosure Agreement between the parties provides that if relevant information is disclosed as part of settlement negotiations, "the litigation part[y] seeking discovery must obtain the production *via the discovery process and not via the exchange of any information hereunder*." (D.I. 209, Ex. 20 at 2 (emphasis added)). The parties disagree as to the meaning of this statement. While both parties agree that the information disclosed in settlement discussions is not inherently protected from disclosure or use, Defendants argue that the information must be separately disclosed in

discovery to be usable. (D.I. 203 at 19-20). Plaintiff argues that as long as the information disclosed was responsive to a discovery request, it is permissible to use it, regardless of whether a separate disclosure occurred. (D.I. 240 at 14). Defendants have the better reading of the Nondisclosure Agreement. It explicitly states the parties "must obtain the production via the discovery process." (D.I. 209, Ex. 20 at 2).

Defendants have identified multiple pages of Ms. Bennis' report where she purportedly uses information solely provided by Defendants in connection with the settlement meetings. (D.I. 203 at 20). Ms. Bennis in her report relies upon calculations from Plaintiff's CEO, Mr. Stoeffler, which were done using information provided by Defendants to Plaintiff pursuant to the Nondisclosure Agreement as part of the settlement negotiations. (D.I. 209, Ex. 15 at 44). Plaintiff seems to argue that it is not improper for Ms. Bennis to rely on this information because it came from Mr. Stoeffler rather than from the Defendants. However, the calculations provided by Mr. Stoeffler relied on information that was solely disclosed by Defendants in the settlement negotiations.[2] Thus, Ms. Bennis' opinion relies on information received from Defendants, not via the discovery process, but through the settlement negotiations. Nor does Plaintiff's own production of Mr. Stoeffler's calculations in discovery make reliance on the information proper.[3]

As Ms. Bennis' opinion improperly relies on information from the settlement negotiations, I must determine the extent to which her lost profits opinion should be excluded or struck. Defendants assert that the entirety of Ms. Bennis' lost profits opinion should be excluded because she has admitted that without Mr. Stoeffler's calculations, her opinion would not be reliable. (D.I.

---

[2] Defendants note that Mr. Stoeffler was not permitted under the Protective Order to have access to Defendants' financial information provided in discovery. (Hr'g Tr. at 65:4-7). Plaintiff agreed. (Id. at 65:13-14).

[3] Plaintiff suggests that Defendants have waived this objection by not previously objecting to the disclosure of Mr. Stoeffler's calculations in discovery. (D.I. 240 at 17). However, disclosing information in discovery does not necessarily indicate an intent to rely upon that information at trial. Thus, Defendants did not waive their objection by failing to note an objection at an earlier stage of this litigation.

203 at 21 (citing D.I. 210, Ex. 23 at 173:1-11)).   Plaintiff asserts that the same or similar information upon which Ms. Bennis relies was disclosed by Defendants in discovery.  (Hr'g Tr. at 46:5-11).  At oral argument, I asked Plaintiff to file a letter explaining how the appropriate numbers could be reached from sources that were not products of the settlement negotiations.  (Hr'g Tr. at 68:17-22).  Plaintiff has done so, and Defendants have responded.  (D.I. 278; D.I. 285).

After reviewing the letters, I agree with Plaintiff.  Ms. Bennis has identified sources from which she could have conducted a similar incremental cost analysis with other properly discovered information.  (D.I. 278).  I believe it would be possible for Ms. Bennis to supplement her expert report to provide a lost profits analysis without reliance on the confidential settlement discussions or information improperly obtained thereunder.

Defendants also assert that Ms. Bennis' lost profits opinions improperly conclude without sufficient support that Defendants would have bought the entire Link Kiosk from Plaintiff rather than solely the claimed display assembly. (D.I. 203 at 22-23).   I agree with Defendants.

The Federal Circuit has held that "demand for [an] entire apparatus is, in most circumstances, not interchangeable with demand for a patented component of the larger apparatus." *Calico Brand, Inc. v. Ameritek Imports, Inc.*, 527 F. App'x 987, 996 (Fed. Cir. 2013) (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)).  Here, Ms. Bennis has not explained why demand for an outdoor display is interchangeable with demand for a kiosk that includes an outdoor display.  Additionally, Ms. Bennis has provided no evidence to support her opinion that Defendants would have purchased the entire kiosk from Plaintiff, other than restating the belief of Plaintiff's CEO, Mr. Dunn.  Ms. Bennis' only support for providing a lost profits opinion based upon a kiosk rather than the smaller patented display assembly is the following:

- "I understand MRI believes that "but-for" Civiq's infringement, MRI would have sold its products to Civiq for purposes of fulfilling the LinkNYC contract." (D.I. 209, Ex. 25 at 26-27).

- Evidence regarding demand for digital signage, but without reference to kiosks. (*Id.* at 30-32)

- Civiq's interest in acquiring MRI, but without tying this interest to supply of the kiosks instead of display assembly.  (*Id.* at 34).

- "I understand from my discussion with Mr. Dunn that MRI would have supplied the entire digital display to Civiq and that part of MRI's business is to customize a product to meet the specification requirements of the customer." (D.I. 209, Ex. 26 at 10).

These opinions either restate Plaintiff MRI's belief with no further supporting evidence or cite evidence that is not sufficiently tied to the facts.  This is impermissible "unfiltered regurgitation" of another's opinion.  *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 865974, at *3 (D. Del. Mar. 7, 2013).

These errors are compounded by Ms. Bennis' failure to support her opinion that Plaintiff's lost profits would have been equal to Defendants' profits from its sales of the accused Link product with economic evidence.  Specifically, Plaintiff and Ms. Bennis put forward a theory of lost profits where Defendants are the customer, rather than the traditional lost profits case where a plaintiff asserts it would have made its lost sales in place of the sales defendant made.  Ms. Bennis' opinion at no point explains why Defendants, in the "but-for" world, would act as a middleman where the cost of goods sold equaled Defendants' gross revenues.  (D.I. 209, Ex. 25 at 43-46).  Defendants would lose money on every sale of the accused kiosk to the NYC Link project.  Thus, Ms. Bennis does not rely on sufficient facts or reliable principles for her lost profits opinion.

Therefore, I will exclude Ms. Bennis' lost profits opinion under Federal Rule of Evidence 702.

### 2. Reasonable Royalty Opinion

Defendants also move to strike Ms. Bennis' reasonable royalty opinion for (1) failure to support her opinion that the entire market value rule applies and (2) failure to support her opinions with reliable evidence.  (D.I. 203 at 27, 31).

Ms. Bennis offers an opinion that the royalty base should be the entire market value of the accused product because "an LCD screen and other electrical components would be valueless when simply placed outdoors if not for the protection provided by the patented thermal management technology."  (D.I. 209, Ex. 25 at 53).  However, this is contrary to Federal Circuit precedent.  For multi-component products, the royalty base may only include the products' entire value where the expert shows "that the patented feature alone cause customers to purchase the accused products."  *AVM Tech., LLC v. Intel Corp.*, 2013 WL 126233, at *2 (D. Del. Jan 4, 2013).  "It is not enough to merely show that the [patented technology] is viewed as valuable, important or even essential to the use of the" product.  *LaserDynamics*, 694 F.3d at 68.  Neither does Ms. Bennis explain why the LCD screen and other electrical components "are simply generic and/or conventional and hence of little distinguishing character [such that] it may be appropriate to use the entire value of the product because the patented feature accounts for almost all of the value of the product as a whole."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 978 (Fed. Cir. 2018).

Ms. Bennis' reasonable royalty opinion is not saved by the use of the comparable license between Plaintiff and OnDIGItech.  The comparable OnDIGItech license was for "flat panel display" products.  (D.I. 209, Ex. 25 at 64).  Ms. Bennis does not explain why the apportionment inherent in the license's royalty rate for a "flat panel display" would apply to a larger kiosk product

that includes multiple technological components including a "flat panel display."[4]   (*Id.*).   Thus, Ms. Bennis has failed to provide sufficient facts or reliable evidence that the proper apportionment of the value of the patented invention was inherent in the OnDIGItech license.

Thus, I agree with Defendants that Ms. Bennis' reasonable royalty opinion does not conduct a reliable apportionment analysis.   Therefore, I will grant Defendants' motion to exclude Ms. Bennis' reasonable royalty opinion.

### C. Dr. Silzars' and Ms. Bennis' Noninfringing Alternatives Opinions

Defendants argue that both Dr. Silzars' and Ms. Bennis' opinions regarding non-infringing alternatives should be excluded because (1) they are based solely on personal beliefs and speculation and (2) they rely on the incorrect legal standard for "availability."   (D.I. 203 at 34-37).

#### 1.   Acceptability

Defendants argue that both experts' opinions on the acceptability of potential alternatives should be excluded because they rely solely on "unsubstantiated beliefs" of Plaintiff's CEO.   (D.I. 203 at 34).

I disagree.   First, Ms. Bennis' opinion regarding the acceptability of potential alternatives relies on more than solely discussion with Mr. Dunn.   For example, Ms. Bennis cites to the expectations of the LinkNYC project (D.I. 209, Ex. 25 at 35-36) and deposition testimony from both Mr. Kaszycki and Mr. D'Amelio regarding other competitor's kiosks and panels (*id.* at 36-38).   To the extent that Defendants disagree with Ms. Bennis' opinions regarding the lack of noninfringing alternatives, that is an issue of the weight and credibility her opinion should be given, not its admissibility.

---

[4] It seems obvious that no sensible explanation is possible.

Second, Dr. Silzars' opinion also relies on sufficient facts to support his opinion regarding the acceptability of purported noninfringing alternatives. Dr. Silzars looks to the technical requirements for the LinkNYC project as a proxy for what Defendants would have accepted if they had not made their own infringing product. (*See* D.I. 210, Ex. 31 at ¶¶ 15, 18-19, 24, 29).

As to availability, Dr. Silzars' opinion does not contradict *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999). As the Federal Circuit stated, "Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not." *Grain Processing*, 185 F.3d at 1353. Here, I understand Dr. Silzars will testify that certain noninfringing alternatives were not available because the purported alternatives (1) were not in fact on the market during the relevant period and (2) could not easily have been designed during the relevant period. (D.I. 210, Ex. 31 ¶¶ 15-16, 24, 28). This is legally acceptable testimony and will not be struck. Thus, I deny Defendants' motion to exclude Ms. Bennis' and Dr. Silzars' opinions regarding noninfringing alternatives.

### D. Dr. Silzars' Miscellaneous Opinions

#### 1. Secondary Considerations

Defendants argue that Dr. Silzars' opinions regarding secondary considerations of non-obviousness should be excluded because he does nothing other than uncritically repeat an interrogatory response and the beliefs of Plaintiff's CEO. (D.I. 203 at 38). Defendants also argue that Dr. Silzars has failed to establish a nexus between the presented evidence and the merits of the claimed invention. (*Id.* at 40).

I disagree. First, Dr. Silzars' expert report does more than simply incorporate an interrogatory response. Dr. Silzars provides specific examples for each secondary consideration

that he asserts supports nonobviousness.  (D.I. 208, Ex. 13 ¶¶ 657-61).   Second, experts are

permitted to rely on facts provided by employees and other experts.  Fed. R. Evid. 703.  Dr. Silzars

does not appear to be uncritically regurgitating the opinions of others but using the testimony of

others to provide an appropriate factual basis for his opinions.  (D.I. 208, Ex. 13 ¶¶ 657-61).

Finally, Dr. Silzars pprovides evidence supporting a nexus between the secondary considerations

and the merits of the claimed invention.  Though Dr. Silzars does not explicitly identify the nexus,

his opinions clearly tie the evidence of secondary considerations to the claimed invention.  (*Id.* at

¶¶ 658-61).

Defendants' arguments thus go to the weight and credibility of Dr. Silzars' testimony,

which can be addressed on cross-examination.  Therefore, I will deny Defendants' *Daubert* motion

as to Dr. Silzars' opinions on secondary considerations of non-obviousness.

## 2.  Hyundai Infringement Opinion

Defendants ask me to exclude Dr. Silzars' opinion that the Hyundai product infringes

because his infringement analysis is insufficient.  (D.I. 203 at 40).  I agree.  Dr. Silzars engages in

no actual analysis of the product's features as compared to the claim limitations.  (D.I. 210, Ex. 31

¶ 31).  Therefore, this opinion is neither supported by sufficient facts nor the product of reliable

principles and methods.

Plaintiff asserts that Dr. Silzars' infringement opinion reviews more information than Mr.

Sharp's noninfringement opinion, which also "did no analysis as to whether the Hyundai product

infringes."  (D.I. 240 at 36).  But Plaintiff has not challenged Mr. Sharp's non-infringement opinion

under *Daubert*.  An expert's opinion that is not the product of sufficient facts or data or the product

of reliable principles and methods cannot survive simply because the opposing party's expert also

14

offers an improper opinion.  Dr. Silzars' opinion is not the product of reliable principles and methods, and therefore will be excluded under Federal Rule of Evidence 702.

## IV.    CONCLUSION

For the foregoing reasons, I deny Plaintiff's motion, grant Defendants' motion as to Ms. Bennis' lost profits and reasonable royalty opinions, and Dr. Silzars' infringement opinion on the Hyundai product, and deny Defendants' motion as to all else.

An accompanying order will be entered.